Putnam, J.
The plaintiffs sue in their capacity of deacons of a church, to reco, specifically the goods which belong, as they offer to prove, to the church: and which the defendant has taken and unjustly detained.
It is objected that the plaintiffs cannot maintain replevin, but that their writ should be abated; because they were never in possession of the goods replevied, until after the service of the writ.
But it seems to me, that this ¿ose is analogous to that of an executor, who may maintain replevin for goods, which were wrongfully taken from the testator in his lifetime, and detained after (7). In the case referred to, it is said that the replevin affirmed the property to remain, so that the executor might well have the action ; and as the" testator’s property is transferred to the executor, the right to recover the possession must be transferred also.
For the same reason a husband may have replevin for the goods which belonged to his wife, while she was sole ; for the property is vested in himself by the marriage. And the better opinion is, that he may sue alone, notwithstanding hé never had the possession.
There is another case perhaps stronger. The lord may have replevin for the cattle of his villain; notwithstanding the lord had neither the possession nor the property before the action. The action itself is considered as amounting to a claim in law, and vests the property accordingly; although it is a general principle, that the plaintiff must have the property in the goods at the time of the taking (8).
But there is another case more like the case at bar. An abbot is permitted to have replevin for goods taken in the time of his predecessor (9)
*126 The objection most insisted on is, that there has not been a tortious taking: that the goods came into the defendant’s [*150] possession as deacon of the church, and as the * proper person to hold them; and as there has been at most but a wrongful detention, that the writ of replevin should be quashed.
But what is to be considered as an unlawful taking ? Is it confined to a case of taking vi et armis ? Or may one be considered constructively taking goods, who came lawfully into possession, but keeps them from the owner against right ?
Now, I hold that he who will not redeliver goods to the owner, but abuses the trust, is answerable either in replevin for the goods specifically, or in trover for damages ; and that it is at the election of the owner, and not of the tort-feasor, which of these remedies shall be applied (10). For otherwise it would be in the power of one to take advantage of his own wrong; and the party injured might never recover a complete satisfaction for the injury. It has been decided accordingly, when the eminent Chief Justice Parsons presided in this Court and gave the opinion, that, as a general principle, the owner of a chattel may take it by replevin from a person, whose possession is unlawful, unless it is in the custody of the law, or unless it has been taken by replevin from him by the party in possession (11) ,(12). Conformably to this, the same great judge afterwards held that the consignor might maintain trover or replevin against a shipmaster, who stopped short of the port of delivery with out reason, and refused to proceed thither (13). That was a case where the goods came lawfully into the hands of the defendant, by delivery for a special purpose; and he neglecting to perform the trust, the owner was permitted to recover the goods specifically, or the damages, at his election.
Nor is this new doctrine. “If,” says Littleton, § 71, “I lend one my sheep to tathe his land, or my oxen to plow the land, and he *127 killeth them, I may have an action of trespass against him, notwithstanding the lending” (14). And Lord Coke, remarking upon this, says, “ In these * cases a man may have an [ * 151 j action of trespass on the case for this conversion, at his election.”
In the case of Badger vs. Phinney, the same principles are recognized. It is true, that the facts in that case would have warranted a decision for the plaintiff, on the ground of the original tortious taking, under color of a purchase, which was fraudulent.
We have reviewed and reconsidered the principles, which have been adopted in this Court, applicable to this action, and are satisfied with their correctness.
The cases, which have been cited by the counsel for the defendant from the decisions of the Supreme Court of New York, have, from the unfeigned respect we feel for that tribunal, been examined with attention. In the first [Goodenow vs. Buttrick], it was decided that replevin was not to be confined to cases of distress; but would lie for any unlawful taking. The point now under consideration did not arise ; for the taking there was tortious ; and the possession," as well as the property of the plaintiff, was proved. But what, or whether any thing, should be equivalent to a tortious taking, made no part of the inquiry. The next case [Hopkins vs. Hopkins] was replevin for taking the plaintiff’s sheep. The defendant justified the taking them damage feasant. The plaintiff replied that the defendant abused the distress afterwards, so as to make him a trespasser ab initia. The abuse consisted in impounding the sheep, before the damages had been ascertained by the fence-viewers; which was required by the statute of New York, and had been so decided in the case of Sackrider vs. M’Donald (15). And the Court were clearly for the plaintiff. Chief Justice Kent, in delivering the opinion, stated that the action of replevin is grounded on a tortious taking (which as a general remark is certainly true), and that where a defendant in replevin has abused a license of the law, he shall be considered a trespasser ab initia, as he would be if the action were trespass. And the chief justice proceeds to cite *Fitz. N. B. 69, and 8 Co. 146, where a party .s not to [ * 152 j be adjudged a trespasser ab initia, but is liable in replevin merely for the unlawful detention. “ As if a man take cattle dam *128 age feasant, and the other tender sufficient amends, and he refuses to deliver them back; if he sue replevin, he shall recover damages only for the detention, and not for the taking, for that was lawful,”
It has been contended for the defendant, that in the case last cited, the defendant became a trespasser ab initia, because he abused a license of the law ; and so the original taking was to be considered as tortious; and thus this case is to be reconciled to the general doctrine requiring a tortious taking to enable the plaintiff to maintain replevin.
But the writers, who mention this case, speak of it as one where replevin will lie ; and where damages are recovered for the unjust detention, and not for the unjust taking (16) ; which certainly would be the rule, if the defendant was to be considered a trespasser ab initia (17).
Now, I do not perceive how the distinction between the abuse of the license of the law, and the license of the party, will be very material (18). The rule is very well stated in 12 Edw. 4. 8. pl. 20. Where a man does a thing by the authority of the law, and after-wards misdemeans himself, his first act shall not be tortious.” In a subsequent case, 21 Edw. 4. 19. Pigot (who was a counsellor) contended that there was no difference between the license of the law and of the party (19) ; but the Court adhered to it.
*129 To apply the rule to the case at bar; the goods came to the defendant’s hands by the license of the law, or of the party. Suppose by the license of the law ; then if, by detaining them unjustly, he becomes a trespasser ab initia, the plaintiff is to maintain his replevin on the ground of an original tortious taking. But suppose they came to the hands of the defendant by the license of the church, which in effect is the party, then he is to be punished only so far as he abused the authority. From that time * only he becomes a trespasser, not from the beginning; [ * 153 ] but, as Lord Coke expresses it in the case above cited,
“he shall be punished for his abuse of it.” The distinction, therefore, goes only to the damages to be recovered.
There is another case cited by the counsel for the defendant from the New York decisions, and the most difficult to reconcile with our views of the law, and of the cases before considered. I refer to the case of Gardner vs. Campbell, where it was decided that replevin would not lie against an officer, who had taken goods on an execution, but who afterwards received the full amount of the same, with all charges, and then refused to deliver them to the debtor. The Court say that the defendant took the goods lawfully, which was certainly proved, and that he did not become a trespasser ab initia by refusing to deliver them. Be it so. Neither did he, who refused to deliver the cattle after tender of amends, become a trespasser ab initia. But he was answerable in replevin for the un lawful detention; and upon the same law and reason, I cannot perceive why the officer ought not to have been. The debtor could recover no damages for the original taking; for that was lawful. But after he had paid all the demands, which the officer had against the goods, his detention of them was equivalent to a taking of them without any authority, from that moment; and he was answerable for the damages accordingly (20).
In the case of Meany vs. Head, which was replevin for some merchandise, the defendant pleaded property in one Green, who put them into the defendant’s store for storage merely. The plaintiff recovered ; but the Court was of opinion that, if the defendant had pleaded non cepit, the verdict must have been for him, on the ground that there was no tortious taking. In that case the defendant had no lien or claim upon the goods. He refused to deliver them, *130 although Green was desirous that the plaintiff should have them. There the authority was derived from the party; and one who abuses the license of the party is to be punished [ * 154 ] * for the abuse. But if such should be the application of the rule, it is apprehended that the plaintiff would be punished by the loss of his goods, and not the defendant for abusing the trust (21).
It is said in 2 Roll. 566, Tit. Trespass, pl. 9, “ that if a man take my goods and carry them on his own land, I may justify my entry into the same land, to take my goods again.” And the reason is given ; “ for they came there by his own act.” Suppose that one should send his horse to a blacksmith to be shod, and after the smith had done his work and received payment for it, he should refuse to deliver him, but should put the horse into his own pasture ; would it not be lawful for the owner to go into the pasture, and take the horse ? The answer is given above ; the horse came into the pasture by the act of the smith. The owner may take him without being a trespasser. If so, may he not maintain trover or replevin at his election ? He is surely not obliged to do justice to himself by his own hands (22).
It is said in Com. Dig. Pleader 3, K. 12, that the defendant may plead bailment to him by the plaintiff, for which detinue lies, and not replevin. The chief baron cites no authority for this. His own is of great weight. We remark, however, that detinue is an action which has fallen into disuse. In this state it is never brought (23) *131 The mischiefs and perjuries, arising from the wager of law allowed in that action, were among the many strong reasons for substituting the action of trover. And besides, the remedy was incomplete; for while it purported to permit the plaintiff to recover his goods specifically, the very object of the suit was defeated by the conditional judgment; which, at the election of the defendant, allowed him to keep the goods, if he chose to pay the price (24).
The question recurs, whether it be competent for one, who detains goods wrongfully, to say that he never took them. It is very evident that it is the same thing to the owner; he is deprived of his goods. Now there are cases, *where a withhold- [ * 155 ] ing is considered as a talcing. In rescous, for example, if one distrain beasts damage feasant, and while driving them to the pound they go into the house of the owner, who withholdeth them, and will not let them be impounded, this withholding is a rescous (25) ,(26). And in replevin it is well settled that, wherever a man has the cattle in his possession wrongfully, the plaintiff may charge him with taking them there (27) ,(28).
It has been argued that there is no pleading in replevin, which would protect the rights of a defendant, who had a lien upon the property; and the opinion of Lord Redesdale, the late distinguished chancellor of Ireland, has been cited to this point (29). But we do not perceive the difficulty suggested. A defendant in replevin may set forth his right in his avowry, and may have a return, if it be well founded; notwithstanding the property of the goods may be in the plaintiff. He may plead that he took the cattle damage feasant, and the goods for tolls, custom, services, and for many other causes; and he may have a return until his demands are satisfied. So he *132 may plead that the plaintiff’s goods were wrecked; and that the defendant took them for the owner, to prevent the thieves from stealing them ; and that he gave notice to the owner, when discovered, offering to deliver the goods upon payment of a reasonable salvage (30). So that the plaintiff" may reply de injuria sua propria (31).
Now, this case is applicable to the case before us in two points. First, that replevin will lie, where the original taking of the goods was lawful; and secondly, that the defendant may well avow for his reasonable claim or lien upon the goods, and for a return until satisfaction be made. And so in any other supposable case, a defendant may justify, and have a return until his lawful demands upon the goods are paid. And when the party, who took the goods, is no longer entitled to the thing for which he took them, he is not permitted to detain them, but he may justify for the taking [ * 156] of them. Thus it is said in 19 H. 6, pl. *83, “If I distrain for homage, and he who ought to do the homage die, and his executors sue replevin, there I ought to justify ; because the thing, for which the taking was had, is gone by his death.” But he could not in that case have a return. Here is a case in which replevin will lie, where the goods were lawfully taken, but unlawfully detained. The lord had a right to seize for the services due from his tenant; but when the tenant died, the right to the services died with him. The lord could not rightfully detain, therefore, after the death of the tenant; but is liable to the replevin of the executor (32). He is nevertheless to be excused for the taking ; for that was lawful (33). The truth is, that the pleadings and proceedings in this action seem peculiarly well adapted to promote justice and protect the rights of the parties, both of whom are actors.
The argument from inconvenience has been much pressed upon this occasion. It has been argued that, under color of a replevin. *133 every man may have his house stripped of his family pictures, and be completely robbed of his goods under color of law.
That would indeed be a great abuse of legal process, requiring exemplary punishment. But what good thing is not liable to be abused? On the other hand, the inconvenience would be intolerable, if the action would not lie to recover specifically the goods, which should be unjustly withheld. Suppose that one should send his ship to be repaired ; if the shipwright should afterwards think it better for him to keep her, or to send her freighting on his own account, must the owner submit to the change of property against his consent ? Shall he be obliged to accept a judgment for the damages, which may never be paid ? And so of a thousand things, the value of which cannot be fully compensated by money. Take, for example, a chronometer or other instrument of rare and curious workmanship, or a picture, or a manuscript, unlawfully detained (34).
*But the argument from inconvenience, which had so [ * 157 ] great an influence upon the Lord Redesdale, has no application here (35). If, indeed, a replevin was a judicial writ, or grant-able only at the discretion of the Court, it might be necessary to consider that question. But as it is issued, like all other original writs, upon the demand of the plaintiff, it is not in the power of the Court to prevent any of the inconveniences, which are anticipated from the abuse of the process. All that can be done is to punish such abuse, when it occurs, as is done in other like cases. A plaintiff in replevin can always set forth a sufficient cause of action ; and upon giving the security required by law, he has a right to have the goods delivered to him. If the writ were to be abated, the defendant would have the same difficulty in regaining his goods, as he would have if he defeated the plaintiff upon the merits.
The statute of 1789, c. 25, seems to proceed upon these principles, authorizing a replevin for goods taken, detained, or attached ; *134 adopting the common law, where they are taken or detained; and extending the remedy, where they are attached (36).
Upon the whole matter, we are satisfied that the plaintiffs may well maintain this action, and that the defendant must therefore answer over (37).

Respondeos ouster awarded.

 1 Sid. 81, Arundell vs. Trevil, Vin. Abr. Replevin, G.

 Co. Lit. 145, b.

 [In all these cases, there is supposed to have been a tortious taking; and the executor, husband, and abbot have succeeded to the rights of the person to whom the *126 tort was done. But there is no case where an executor, husband, or abbot have maintained replevin against the bailee of goods wrongfully detained. The form of writ in the register, for an executor, complains of a taking. (Regist. Bren. 81. b.). And as to the case of the lord and his villain, it was a question relative to the property in the cattle, and not to the talcing; and by relation, the possession and property of the villain was that of the lord, and the tortious taking was by relation from the lord.—Ed.]

 [If so, then why may he not maintain trespass ?—Ed.]

 5 Mass. Rep. 284.

 [The rule that goods in custodia legis cannot be replevied, does not extend, as is erroneously supposed in the case referred to, to the goods of a stranger wrongfully taken by virtue of a legal process against another person.—Clark vs. Skinner, 20 Johns. 465. —Thomson vs. Button, 14 Johns. 86. —Ackworth vs. Kempe, Dougl. 40. —Sanderson vs. Baker, 2 Bl. 832. —Commonwealth vs. Kennurd, 8 Pick. 133. —Judd vs Fox, 9 Cowen, 259.—Ed.]

 6 Mass Rep. 427, Portland Bank vs. Stubbs.

 [In this case the owner had not parted with the possession, but only gave the custody to the defendant (2 Russ, on Crimes,pp. 106, 158. 2d Ed.); and besides there was something more than an unlawful detention ; there was a total destruction of the thing lent by force and violence ; but if it had been a case merely of bailment and unlawful detention, it is quite clear that trespass, vi et armis, and, consequently, replevin, would not lie. Detinue, in the latter is a and adequate but not in the torn cr.—Ed ]

 10 Johns 253.

 3 BL Com. 152. —Bull. N. P. 60. —Com. Dig. Replevin, C.

 [It was formerly held, that, in these cases, the defendant was a trespasser ab initia. [Ralle, Ab. Trespass, G.pl.. 8.—Keilway, Rep. 92, b. 63, b. 21 Ed. 4.19.76.) And although it was afterwards held, in the Six Carpenters' case (8 Coke, 146), that a person does not become a trespasser by mere non-feasance, yet, by proceeding to impound after a tender of amends (which, to be available, must be made before impounding), the defendant is guilty of a wrongful act, which would make him a trespasser ab initia within the last-mentioned case. But as the books mention replevin as being the ancient and appropriate remedy in cases of distress, (13 Ed. 1. cap. 2.) where of course there is a taking, it is not material for the purposes of the argument whether the defendant is to be considered as a trespasser ab initia or not. And furthermore, if damages for a mere detention were ever recoverable, it must have been under the old action of replevin in the det’net, which is now out of use; for, in replevin, in the detinuit, the only form now in use, in England, damages are recoverable only for the taking. —1 Saund. 347, b., in notis.—Ed.]

 [It is very material when the question is whether or not, by an abuse of the license, the person has become a trespasser.—Ed.]

 [This was an action of trespass quare clausum fregit. Bigot admitted the dis* tinction between receiving chattels by delivery or bailment from the owner, and taking them by authority of law, and only attempted to show that there was no difference between an abuse of a paroi license of the owner to enter a tenement, and an abuse of a license of entry given by law. He said, “ Si jeo bail a vous mon cheval pour chevaulcher et vous luy occistes jeo n’aura breve de trespass general pur ceo que vous avez le possession de mon liverie, mais, si jeo done a vous licence pur entrer mon meason de faire certain chose vous conveint de pursuer votre licence, ou autrement votre primier entre est torcious. Et nul diversity entre tiel licence et lou le lev licence.” 21 Ed. 4. p. 19. And in reply to Neel, J., he said, “Jeo agree a votre cas del cheval pur ceo que il fuit deliver a luy per le partie quel ne poit estre torcious per nul act apres, mes stat indifferenter que le defendant entre per reason de ceo licence ou pur fair auscun trespass, mes son entent serra entende et connu per son *129 demeanor apres son entre.” (p. 76.) These cases referred to by the Court from the year books, are authorities directly in point, showing that trespass, and of course replevin, cannot be maintained in cases of bailment or delivery, by the owner to the defendant.—Ed .]

 [But here was a taking by the defendant, and not a delivery by the owner, and whether it were constructively tor tious or not, differs from the case reported in the text—Ed.]

 [He would have no more reason to complain, if he were mulcted with costs, than any other plaintiff who commences a wrong action; but how he could thereby lose his goods is not easily conceivable.—Ed.]

 [He may maintain trover or detinue ; but if there was no tortious taking, there is no reason why he should maintain replevin or trespass ; unless this is to be considered as a case where the owner has not parted with the possession, or as a case where there was no bailment.—Ed.]

 [It is a very common remedy elsewhere, and is recognized by our own statutes. See act of 1786, c. 52, § 1. The modern cases, where this action has been brought, both in England and in the United States, are very numerous, and rather tend to snow that replevin, in such cases, could not be maintained. —Garth vs. Howard & Al. 5 Car. & P. 346. —1 Moore & Scott, 698. —Phillips vs. Robinson, 4 Bingh. 106.—12 Moore, 308. —Gledstare vs. Hewitt, 1 Crompt. & J. 565. —1 Tyrn. 445. —1 Price, P. 671. —Kettle vs. Bromsall, Willes, 118. —Mills vs. Graham, 4 B. & P. 140.—Atkinson vs. Baker, 4 D. & E. 229. —Hall vs. White, 3 Car. & P. 135. —Stevenson vs. Addeson, 5 L. J. K. B. 265. —Pawley vs. Holly, 2 Bl. 853. —Land vs. Ld. North, 4 Dougl. 266. —Harrington vs. Price, 3 Barn. & Adolph. 170. —Darden vs. Allen, 1 Devr. 466. —Robinson's Admr vs. Brock, 1 H. & M. 213. —Murrell vs. Johnson's Admr., 1 H. & M. 450. —Merritt vs Warmouth, 1 Hay, 12. —Newby’s Admr. vs. Blakey, 3 H. & M. 57. —Spiers vs. Alexan der. 1 Hawks, 66. —Royal vs. Eppes's Admr. 2 Munf. 479. —Shepherd vs. Edwards 2 Hay, 186. —Wethers vs. Wethers's Exr., 6 Munf. 10.—Skipper vs. Hargrave, Martin 74. —Bass vs. Bass, 4 H. & M. 476. —Butler vs. Parks, 1 Wash. 76. —Armstrong vs Simonton, 2 Murphy, 351. —Bates vs. Gordon, 3 Call. 355. —Buckner vs. Haggin, Mun. roc, 59.-Biggar's Admr. vs. Anderson, 1 H. & M. 54. —Garland vs. Bugg, 1 H. M 374.—Merritt vs. Merritt, Martin, 18. —Cornwall vs. Truss, 2 Munf. 195.—Thomas & *131 Wife vs. Tanner, 6 Munroe, 52. —Boatwright vs. Meggs, 4 Munf. 145. -Austin's Exr. vs. Jones, Gilm. 341. —Boggs vs. Newton, 2 Bibb, 221. —Holleday vs. Littlepage, 2 Munf. 539. —Denny vs. Booker, 2 Bibb, 427. —Higginbotham vs. Rucker, 2 Call. 313. —Grimes vs. Grimes, 2 Bibb, 594. —Bunley vs. Lambert, 1 Wash. 308. —Trimble vs. Stipe, 5 Munroe, 264. —Walthall vs. Johnson, 2 Call. 275. —Hugh vs. Clayton, 3 Call.554. —Belch vs. Holloman, 2 Hayw. 328. —Stratton vs. Minnis, 2 Munf. 329. —Walker's Admr. vs. Hawkins, 1 Hay. 398. —Smith vs. Towne, 4 Munf. 191. —Carrell vs. Early, 4 Bibb, 270. — Fowler vs. Lee, 4 Munf. 473. —Burton vs. Brashear, 3 Marsh, 278. —Fitzhugh's Admr. vs. Beale, 4 Munf. 186. —Tunstall vs. M'Lelland, 1 Bibb, 186. —Boggess vs. Boggess, 6 Munf. 486.—Johnson vs. Posteur, Cam. & Norw. 464. —M'Dewell vs. Hall, 2 Bibb, 410. —Foster vs. Smoot, 1 Marsh, 394. —Marbury vs. Madison, 1 Cranch, 173. —Haley vs. Rowan, 5 Yerg. 301. —Baker vs. Beasley, 4 Yerg. 570. —Jones & Glass vs. Littlefield, 3 Yerg. 133. —Ed.]

 Co. Ent. 170, b.

 Terms of the Laxo, Tit. Rescous.

 [Here he does not get possession by delivery, or license of the party, or even of the law; but his first act was a wrongful taking.—Ed.]

 2 Wills. 354, Walton vs. Kersop Al. —2 Chitty, 365 —1 Saund. 347.

 [Because he was always a tort-feasor. Lord Chief Justice Wilmot, in the very case cited, puts it on this condition, viz. “ If he took them wrongfully at first."—Ed.]

 1 Sch. Lef. 320

 Lill. Ent. Jacobson vs. Lee.

 [The case of Jacobson vs. Lee, referred to for this doctrine, does not maintain it. The taking was avowed and justified. No question was raised by the pleadings respecting the propriety of the action. The plaintiff replied de injurió, suó. propriáf on which issue was joined, and the verdict was, that the defendant did not of his own wrong, but for the cause in his avowry alleged, take the goods. It does not appear that any judgment was "ever rendered upon the verdict. But if so, it rested onlj; on the ground that the defendant did not wrongfully take the goods. It is obvious, w mt-ever was the result of the case, that there was not much skill or technical nicety displayed in the pleadings. The replication would have been held bad on demurrer. —1 Chitty, Pl. 5 Lond. ed. 624 —1 B. & P. 76. —2 Saund. 284, c. n. 3.—Yelv. 158, note by Metcalf.—Ed.]

 [Here was a taking by authority of law.—Ed.]

 See Roll. Abr. Avowry, Tit. Justification^ pi. 4, 5, 8, 9.

 [Why may he not have a much better process in the Court of Admiralty, in the first-mentioned case, and in chancery in the other cases? —Fells vs. Reed, 3 Ves 71. —Lowther vs. Lowther, 13 Ves. 95. —Pusey va. Pusey, 1 Vernon, 272. —Duke of Somerset vs. Cookson, 3 P. Williams, 390. —Lloyd vs. Loring, 6 Ves. 773. —Jackson vs. Butler, 2 Atk. 306. —Brown vs. Brown, Dick. 62. —Earl of Scarborough vs. Parker, 1 Ves. 267. —Pearne vs. Lisle, Amb. 77. —Wallwyn vs. Lee, 9 Ves. 33. —Earl of Macclesfield vs. Davis, 3 Ves. Beam. 18.—These cases seem to show that there was no adequate remedy at law.—Ed.]

 [There aro the same objections to the action in these cases here as there. We would ask, in the language of Lord Redesdale, “ How is a party to be put in the situation he ought to be in when a right to property is to be tried ? The first evidence of property is possession; and that you take from him in the first instance, and you throw the onus of proving title upon liim on whom, as having the pHmdfane title posses sion, that onus ought not to be thrown.—Ed.]

 [It is quite clear that the statute embraces only two cases,—First, 11 Where any person shall have his cattle restrained or impounded in order to obtain satisfaction for damages they may have committed, or to obtain a forfeiture supposed to have been incurred by their going at large, out of the inclosure of the owner, in violation of laio) in-order to have the legality of such distraint or impounding determined, he may have and prosecute a writ of replevin in the form prescribed.” Secondly, “ IVhen any goods or chattels shall be taken, distrained, or attached, which shall be claimed by a third person, and the person thus claiming the same shall think proper to replevy them, he may take out and prosecute his wHt of replevin in the form prescribed.”—In the first case, the form prescribed by the statute contains an allegation that the cattle have been “ unlawfully taken,” and are “ unlawfully distrained or impounded.” And in the second case, the form prescribed contains an allegation that the goods were “ unhnofully, and without any justifiable cause, taken and detained.” (Statute, 1789, c. 26.) The statute, in fact, does not extend the remedy, or alter the common law, so as to allow the action of replevin to be maintained in any case where it could not have been before maintained. In the first case of distress, replevin at the common law was the appropriate remedy; and in the second case, the goods are not so in the custody of the law that a third person claiming them may not have a writ of replevin for them. —Clark vs. Skinner, 20 Johns. 465. —Thomson vs. Button, 14 Johns. 86. —Ackworth vs. Kempe, Dougl. 40. —Sanderson, vs. Bank, 2 Bl. 832. —Commonwealth vs. Kennard, 8 Pick. 133.—Sed vide Portland Bank vs. Stubbs & Al. 6 Mass. 422. —Cromwell vs. Owings, 7 Harr. & Johns. 55. —Neither the form of the writ or the statute, give any countenance to the notion that replevin may be maintained for an unlawful detention, but, on the contrary, extend only to cases of supposed unlawful taking.—Ed.]

 [It is quite clear that, at the common law, no action of replevin could be maintained in this case. The form of the writ in the register is il Prcecepimus tibi quad juste, fyc., replegiare facias A. averia sua qua B. cepit et injuste detinet.” (Reg. 81.)— Non cepit is the general issue. (1 Bro. Ent. 312. 2 Mod. 193.)—it has always been held that the defendant need answer nothing but the taking. So in the year books we find a case where this was held to be the law. u Nota en unplee des prisel des avers le defendant fuist resceve a dire qu'il ne les prist point sans rien a la detinue.” (5 Ed. 2. 157.)—So Littleton says, u En replegiare, le brief sera quare cepit averia et ea injuste detinet uncore un issue sen-vera pur tout, que ne prist point et ne render al detinet car se iineprist eux le detinet per cest brief n'est apvrpose.” On the contrary, in detinue, the form of the writ in the register is “ Praecipe A. quad juste, fyc., reddat B. quondam pixidem cum cartis scriptis quam ei injuste detinet ut dicat, fyc. (Reg. 139.)—And non detinet is the general issue. In Townsend's tables (Abatement, 3.) it is said to be a good plea in replevin that the goods were bailed to the defendant, for which detinue lies, and not replevin. And the books of pleading give a form of such a plea (Rastell, Ent. 569.—6 Instr. Cler. 517. -Com. Dig. Plead. 3 K. 12. Replevin, A. —Morg. Vad. Mec. 70-72. —Ham. N. P. 334.)—The course of pleading shows what the law is. (3 D. & E. 161.)—The cases and authorities, both ancient and modern, are very numerous wherein the same doctrine is maintained.—Galloway vs. Bird, 4 Bing. 299. —12 Ed. 4, 5, 13 Ed. 4, 9, 21. —8 H. 7, 14. -3 H. 7,12. 21 Ed. 4, 11, 76. —Stamd. P. C. 25. —Hale, P. C. 504.—Bul. N. P. 52. —3 Wooddeson. p. 219. —Gubbings vs. Creed, 2 Sch. & Lef. 222, 223. —Nightingale vs. Adams, 1 Show. 91. —Gilb. Rep. 140, 141, 148. -Exparte Chamberlain, 1 Sch. & Lef 329. —Shannon vs. Shannon, 1 Sch. & Lef. 324. —Matter of Wilson's Bankruptcy, 1 Sch. & Lef. 320, in note, Gilb. by Imp. 80—82. —Dow vs. Wilkinson & Al. 2 Stark. 288. —Farwell vs. Berresford, 1 B. & B. 328. —Wilkinson Rep. 2, 82 —Pangburn vs. Partridge, 7 Johns. 140. —Hopkins vs. Hopkins, 10 Johns. 373. —Batton vs. Thomson, 11 Johns. 87. —Gardner vs. Campbell, 15 Johns. 402.—Mills *135 vs. Martin, 19 Johns. 31. —Clark vs. Skinner, 20 Johns. 467. —Marshall vs. Davis, 1 Wend. 109. —Varden vs. Bell, 3 Rand, 448. —Wright vs. Armstrong, 1 Breese, 130. —Byrd vs. O'Hamlin, 1 Rep. Cons. C. 401. —Cummings vs. M'Gill, 2 Taylor, 98. —Sed vide Badger vs. Phinney, 15 Mass. 359. —Marston vs. Baldwin, 17 Mass. 606. —Commonwealth vs. James, 1 Pick. 375. —Seaver vs. Dingley, 4 Greenleaf, 315. —Weaver vs. Lawrence, 1 Dall. 376. —Shearick vs. Huber, 6 Binn. 2.2 Brown, 160, S. C. —Stoughton vs. Rappala, 3 Serg. & Raw. 562. —Keite vs. Boyd, 16 Serg. & R. 300. —Cullam vs. Bevans, 6 H & J. 469. —Ed.]