ARGUED AND DETERMINED

IN THE

# SUPREME JUDICIAL COURT

FOR THE

## COUNTY OF MIDDLESEX.

---

## WILLIAM PAGE *versus* MICHAEL CROSBY.

After the deacons of a church had seceded from it, the church elected trustees, authorizing them to demand, receive and recover of the deacons all the property belonging to the church. The communion plate, which was under the care of the defendant, one of the deacons, was kept at the house of one R., who lived near the meetinghouse. The trustees showed the defendant a copy of the vote by which they were appointed, and requested him to deliver them the plate. He replied that he would consult his counsel, and if the trustees had a right to the plate, he would deliver it to them. After a few days, the trustees made a demand on R., who refused to deliver the plate, saying that the defendant had directed her not to deliver it to any one without an order from him. The church then elected the plaintiff a deacon ; and he showed R. the certificate of his election and demanded the plate, but R. refused to deliver it, assigning the same reason as before; whereupon the plaintiff forthwith replevied it, in an action against the defendant. It was *held*, that the trustees were not authorized to receive and recover the property; that supposing they had such authority, the defendant's refusal to comply with their demand until he could ask advice of counsel, was not unreasonable ; that supposing they had authority to recover the property, their demand, if a valid one, could not avail the plaintiff, suing in his capacity of deacon ; that the plaintiff's demand on R. could not affect the defendant before he had notice of it ; and that, consequently, there was no evidence of a tortious detention by the defendant, before the commencement of the action of replevin.

REPLEVIN. On a case stated it appeared, that before the year 1832, the plaintiff and the defendant were members of a religious society in the town of Bedford, under the pastoral care of the Rev. Samuel Stearns. The defendant and Amos Hartwell were deacons of the church ; of which the plaintiff was a member.

In consequence of a difference of religious views and opin-

ions in the society, a division took place in 1832, by the with drawing of the deacons and a large majority of the members of the church, and a minority of the members of the society who were not church members. The persons who thus withdrew formed themselves into a society under the name of the Trinitarian Congregational Society in Bedford. The articles replevied were the property of the church prior to the separation, and were used in administering the ordinance of the Lord's supper. The defendant was the eldest deacon, and was accustomed to provide for the administration of that ordinance, but living about two miles and a half from the meetinghouse, the communion plate and other articles were not kept at his house, but were left with Mrs. Reed, a widow and a member of the church, who lived near the meetinghouse.

On the 12th of November, 1832, the clerk of the Trinitarian society certified to the clerk of the First society or parish, that the defendant, with others named, were members of the Trinitarian society ; and on the 9th of May, 1833, a like certificate was made, containing the names of the Rev. Samuel Stearns and of Amos Hartwell and others.

On the 4th of June, 1833, the members of the church who had not withdrawn and joined the Trinitarian society, held a meeting, pursuant to a notice given in the usual manner from the pulpit the preceding Sunday. No notice was given of any particular business to be transacted. After the meeting was organized by the choice of a moderator and scribe, it was voted, that as Crosby and Hartwell, the deacons of the first church, had seceded from the church, and were no longer a corporation and trustees therefor, they should be removed from that office accordingly. The plaintiff and Charles Spaulding were then chosen trustees, with full power to ask, demand, receive and recover of Crosby and Hartwell, all the property belonging to the First church, such as plate, funds, records, &c.

The trustees, on the day after their appointment, applied to Hartwell for the communion plate, showing him a copy of the vote by which they were appointed. He replied that the defendant was the oldest deacon, and he requested them to apply to him. They then went to the defendant and showed him a copy of the vote, and requested him to deliver them the prop-

erty.  He replied that he would consult his counsel as soon as
convenient, and if they had a right to it, he would deliver it to
them.   At the time of this application the defendant was not
at home, but was attending the installation of a minister in the
meetinghouse in Bedford.

On the 7th of June the trustees went to Mrs. Reed and re-
quested her to deliver up the property, and offered to give her
a bond of indemnity.   She replied that she would give them
an answer that evening or the next morning ; and in the morn-
ing she declined, saying the defendant had directed her not to
deliver the property to any person, without a written order
from him or Hartwell or their being present.

The defendant, at all times when the subject was mentioned
to him by the plaintiff or his associates, said that he was ready
to deliver up the property as soon as there should be any one
legally authorized to receive it ; and the same statement was
made to Mrs. Reed, and by her the statement was made at
both times when she was called on by the trustees and by the
plaintiff as deacon.

On the 8th of June the writ in this case was prepared, only
a blank was left for the name of the plaintiff; and all the
members of the church, being four in number, who had not
filed certificates of their having joined the Trinitarian society,
were personally notified to attend a meeting in the afternoon
of that day, to elect a deacon.   All the persons notified, ex-
cept one, attended the meeting, and the plaintiff was chosen
a deacon of the First church.   The plaintiff then went to Mrs.
Reed and after showing her the certificate of his election, de-
manded the property ; which she refused to deliver, saying
that the defendant had that morning directed her not to deliver
it without a written order from him or Hartwell.   After this
refusal by Mrs. Reed, the writ, having been completed by in-
serting the plaintiff's name, was immediately delivered to the
officer and by him served.   The defendant had given Mrs.
Reed the direction stated by her, before the demand made on
her by the trustees, and again on the day of the service of the
writ and before the demand made by the plaintiff as deacon.
On the last mentioned time the defendant asked Mrs. Reed if
she had not a chamber in which she could lock up the articles ;

she replied that she had, but that she would not lock them up. The occasion of this inquiry by the defendant was, that the plaintiff or some other members of his society had gone into Mrs. Reed's house in her absence and examined the articles, without permission from her or from the defendant.

Upon these facts it was agreed, that the Court should render a judgment in favor of the party who should prevail in the suit, for his legal costs.

*Stearns*, for the plaintiff, insisted that there was an unlawful detention of the property by the defendant ; that the trustees had authority to demand and receive it ; *St.* 1785, *c.* 51, § 1 ; that if they had such authority, they made a sufficient demand on the defendant ; that the depositing of the property in the hands of Mrs. Reed, with the directions given to her by the defendant, amounted to a conversion ; *Bristol* v. *Burt*, 7 Johns. R. 254, and 257, note *a* ; *Murray* v. *Burling*, 10 Johns. R. 172 ; that the plaintiff was duly elected a deacon, and that he could avail himself of the demand made by the trustees ; and that the demand on Mrs. Reed was as effectual as if it had been made on the defendant himself, she being not a general servant, but a special bailee, and acting in the course of her employment ; 3 Stark. Ev. 1500 ; *Shotwell* v. *Few*, 7 Johns. R. 302 ; 3 Dane's Abr. 197, § 25 ; *Jones* v. *Hart*, 2 Salk. 441 ; Com. Dig. *Replevin*, *C* ; *Grey* v. *Smith*, 1 Campb. 387.

*Hoar*, for the defendant, cited *Clark* v. *Skinner*, 20 Johns. R. 469 ; *Ilsley* v. *Stubbs*, 5 Mass. R. 283 ; *Severin* v. *Kep pell*, 4 Esp. R. 156, and note.

MORTON J. delivered the opinion of the Court. According to the settled and established law of Massachusetts, the plaintiff was the legal successor of the deacons who had withdrawn from the old parish, and as such became the lawful owner, and entitled to the possession of the church plate which is the subject of the present controversy. *Baker* v. *Fales*, 16 Mass. R. 488 ; *Stebbins* v. *Jennings*, 10 Pick. 172. The plaintiff has a right to hold these goods in trust and for the use of the church of which he is deacon. And having by means of this suit obtained possession, the parties have agreed that he shall retain it, whether judgment be rendered for or against

h.m. The case, therefore, resolves itself into a mere question of costs. Can the action be sustained upon the facts agreed?

To maintain replevin, either a *tortious taking* or a *tortious detention* is necessary. *Badger* v. *Phinney*, 15 Mass. R. 359 ; *Baker* v. *Fales*, 16 Mass. R. 147 ; *Marston* v. *Baldwin*, 17 Mass. R. 606. The defendant by his former relation to the church had a right to the possession ; and of course there was no *tortious taking*. Was there a *tortious detention?* The defendant lawfully withdrew from the old society and church. The property being in his hands, it was his duty to hold it till some trustee was lawfully appointed to receive it. He was accountable for the property, and a delivery to an unauthorized agent would not discharge him from his liability. Mrs. Reed was his servant, to keep the property, and for her negligence or mistakes he was responsible. His direction to her not to deliver it without his personal or written order, was prudent and wise. A demand, therefore, upon her could avail nothing, till she had communicated it to the defendant and received his direction in relation to it. *Alexander* v. *Southey*, 5 Barn & Ald. 247. We see no objection to the manner in which the writ was made, or to its validity at the time of the service. But we think it very plain that the defendant could not be guilty of a *tortious detention* before he even knew that the plaintiff had demanded the goods or had been elected to an office which conferred on him the right to receive them. It does not appear that he had been informed of either, before the service of the writ. It is, therefore, very obvious that here was no valid demand by the plaintiff.

Nor will the demand by the committee sustain the action. By *St.* 1785, *c.* 51, churches are empowered to choose committees to call their deacons and other officers to account. But this manifestly applies to breaches of trust or other violations of duty. It does not divest the deacons of their corporate power or rights ; nor invest the committee with authority to hold church property. This is a mean provided for compelling this class of trustees, by a proper process and in a proper forum, to render an account of their administration of the trusts confided to them. The legal property must remain in the deacons while they remain in office ; and when they

Page
*v.*
Crosby.

resign or are displaced, it will either remain in them or be in abeyance till their successors are chosen. And in either case, it would be their duty to hold the property till some persons were invested with authority to receive it.

But even if the committee had authority to recover the property and their demand was a valid one, it could not avail the plaintiff. He sues by virtue of his office and his corporate powers. The defendant cannot be liable in two actions, to two different persons, at the same time. If he is liable to the committee, he cannot be to the plaintiff. The committee made the demand in their own right, and not as the agents of the plaintiff or of the corporation now represented by him. That had at the time only a potential existence. *Gunton v. Nurse,* 2 Brod. & Bing. 447. If the committee could originally have maintained an action, their right ceased upon the appointment of a deacon. The property then vested in him, and he only had a right to the possession.

But even if the committee had authority to make the demand, and that could avail the plaintiff, we are of opinion that here was no *tortious detention.* The defendant never refused to deliver the property ; but always declared his readiness and willingness to deliver it whenever any one was authorized to receive it. When the committee made their demand he only desired time to take advice and ascertain his legal rights and duties. This was reasonable and proper, and we think a trustee in his situation, was not bound to decide at his peril, but was entitled to a convenient time to inform himself what he ought to do. Bull. N. P. 46 ; *Solomons v. Dawes,* 1 Esp. R. 83 ; *Mills v. Ball,* 2 Bos. & Pul. 464 ; *Green v. Dunn,* 3 Campb. 215, note ; *Isaack v. Clark,* 2 Bulstr. 312 ; *Watt v. Potter,* 2 Mason, 77 ; *Jacoby v. Laussatt,* 6 Serg. & Rawle, 300. Had the plaintiff, exhibiting satisfactory evidence of his election to the office of deacon, demanded the property, the defendant would probably be presumed to know that he had a right to it, and the postponement of a compliance to get advice, might be deemed a subterfuge to enable him to obtain delay. But when the demand was made by a committee whose right, at best, was extremely doubtful, it may well be supposed that he needed information and advice, and he

was entitled to a reasonable time in which to obtain it. This was not allowed before the action was commenced.

In whatever light we view this case, we can see no such unjustifiable detention as would amount to a conversion in trover, or will support replevin.

*Plaintiff nonsuit, and costs for defendant.*