# Wheelock *v.* Cozzens.

The common law action of replevin will not lie, unless there has been a tortious taking.

ERROR to the circuit court of Adams county.

This was an action of replevin, commenced by Wheelock *v.* Cozzens, in the circuit court of Adams county. The plaintiff Wheelock filed with the clerk of said circuit court an affidavit, stating that Cozzens was in possession of a certain negro man named Emanuel, the property of the affiant, and that Cozzens unlawfully withheld the possession of said negro from him; that the affiant hath lawful right to the possession of said negro, and that the said Cozzens obtained the possession of him, against the consent of the affiant, and contrary to law; and prayed that the common law writ of replevin might issue, directed to the sheriff, &c. The plaintiff Wheelock, at the same time, entered into bond with security, to said Cozzens, in the penal sum of six hundred dollars, with condition to prosecute his suit to effect, or to pay and satisfy said Cozzens all damages, &c.; whereupon the clerk issued a writ of replevin, commanding the sheriff to replevy and deliver to said Wheelock the negro man aforesaid, and that he put by sureties and pledges the said Cozzens to be and appear, &c. to answer said Wheelock in a plea of, &c., wherefore he took the said slave and unjustly detains him against sureties and pledges, &c. The writ being returned executed, the said Wheelock filed his declaration against Cozzens, complaining that said Cozzens took said slave, the property of him the said Wheelock, and unjustly detained him, &c., to his damage, &c.

Cozzens appeared, and on his motion the said writ of replevin was quashed, and the suit abated, and judgment final for costs, &c. The plaintiff Wheelock sued out this writ of error; and assigns errors, to wit, that the court below erred in sustaining the motion to dismiss; that the judgment should have been in favor of

the plaintiff, and that the court erred in refusing to sustain the action of replevin in this case.

Vannerson, for plaintiff in error, insisted:

First. That the court erred in sustaining the defendant's motion to dismiss the case, without plea or demurrer.

Second. The judgment of the court below ought to have been in favor of the plaintiff on the motion.

Third. The court erred in refusing to sustain the action of the plaintiff below.

McMurran, for defendant in error.

The proceedings show that it was not a replevin for goods distrained for rent, but that it issued upon the general ground of an adverse taking or possession; and we maintain that it will not lie in such a case as the present.

It has never been recognized by our courts, for the obvious reason that there has been no legislation authorizing or providing for such a proceeding, except during a particular period, which no longer exists.

It did not exist at common law, except in the case of distress for rent. 3 Bl. Com. 147. Or if it did, it was by a writ issued out of the high court of chancery, and could not be issued by a clerk of a common law court. Stephen on Pleadings, 19, 20, note *h*, and appendix 110; Ld. Raymond 617; and only for a *tortious taking*.

Even in replevin to replevy property seized for rent, legislation was indispensable in order to afford the remedy. Without such legislation it could not exist, there would be no mode of proceeding known to us. Rev. Code 172, et seq.

And this legislation is confined exclusively to replevins in cases of rent—it extends no further; and this limiting of this peculiar remedy to distresses for rent excludes any construction by which these provisions of our law might be extended to other cases than those growing out of attachments for rent.

Again, on the 2d March, 1833, there was a law passed, the 21st section of which expressly provides for the action of replevin not being "confined to the recovery of personal property distrained or attached for rent due," &c., but extends the remedy to any personal

Wheelock *v.* Cozzens.

property wrongfully taken or detained, and provides how the writ may be obtained. See Revised Statutes, 1824–1838, page 409. And the reports of the day have fixed on the opposite counsel the passage of this law.

While it existed, we have no doubt that such a writ of replevin as issued in this case might be issued.   But the legislature considering it too summary a remedy, and too liable to abuse, could tolerate it but for about three years; and accordingly on the 9th February, 1836, repealed the entire section of the act of March, 1833, which we have referred to.   Rev. Stat. 1824–1838, page 577.

We are told that our present legislature contemplate passing a law granting this remedy in other cases than distresses for rent, with certain guards and conditions.   But at present we have no such remedy under our laws.   And the legislation of our state shows that it is clearly intended there should not be any such at this time, except in distresses for rent.

Again, the supreme court of this state years ago decided directly upon this question, in accordance with the decision of the court below, though the case is not reported in Walker's Reports, for some reason unknown to us.

Entertaining the views we do, we would just as soon expect the court to recognize and sanction the old obsolete remedies of *wager of battle and wager of law,* as the writ of replevin in this state, under our existing laws upon the subject, and the practice for more than twenty years.

Mr. Justice TURNER, after stating the case, delivered the following opinion.

There have been several attempts made in the courts of Mississippi, both under our territorial and state government, to bring the action of replevin into use as a remedy to recover possession of goods and chattels, in cases other than distress for rent.   Some few of our circuit and district judges have allowed the writ, but in general, it has been refused; and I remember that the question was decided by the supreme court, against the views of the plaintiff in this case; and from that time until the passage of the act of 1833, I know of no instance in which this writ was allowed, except in cases of distress for rent.

Wheelock *v.* Cozzens.

There is a want of legislation to make this a remedy in ordinary cases. It has been considered that the actions of trover, trespass and detinue, and the habeas corpus act in relation to the taking of slaves by force, stratagem, or fraud, are quite sufficient for all purposes in redressing injuries done to persons in relation to personal property; and these remedies are more suitable and more congenial to the provisions of our constitution. Personal estate, and especially slaves, are the most valuable property we hold in this state; and if the plaintiff is right in his view of the law, what great injury might be done to our citizens by the use of the writ of replevin? The complainant makes his affidavit, enters voluntarily into bond and gives security, approved by the clerk, demands and obtains the writ, and gets the sheriff to dispossess a planter, or other person, of all his slaves, stock, &c., and put it forthwith into the possession of the opposite party; and then proceedings are to be had in court, to try the question of right, according to the course of the common law. In the mean time, what becomes of the defendant's crop, to say nothing of other injuries which might be sustained, by this sudden change of possession.

These are doubtless some of the views which our legislature has taken of this matter, from time to time.

To make the writ of replevin operate successfully as a suitable remedy in cases other than distress for rent, there is an evident want of legislation. It is said that the writ of replevin owes its origin to Glanvil, chief justice to Henry the Second; and Blackstone says, "this obtains only in one instance of an unlawful taking, that of a wrongful distress; 3 B. C. 145. The introduction of this writ gave rise to others, such as the writ of *rescous,* of *pound breach, de proprietate probanda, capias in witherram, recordari* or *pone, de retorni habendo, second deliverance,* return *irreplevisable, recaption,* &c. *terms* which, at the present day, sound more like jargon in our halls of justice than our more familiar terms of *trespass, detinue* and *trover.*

The introduction of the writ of replevin gave rise to several statutes in England, such as the statute of Marlbridge; Westminster H. 2d; 13 E., 1 c. 2; 1 P. & M., c. 12; 11 Geo. 2, c. 19; 17 Car. 11, c. 7. These statutes were never in force in this state, as

Wheelock *v.* Cozzens.

they were in New York, and other states who adopted them, after we declared our independence, by their several constitutions. We adopted the common law on coming into territorial government under the ordinance of 1787, and it still exists with us as our great body of rules of civil conduct, modified and repealed, and altered, by our constitution and statute laws.

We have no law requiring an affidavit or bond of a plaintiff in replevin in cases like this, and if this writ should be considered in force here, what direful consequences would result? An individual has nothing to do but to apply to the clerk of a circuit court for a writ of replevin, who issues it, whereby the sheriff may deprive a man of all his moveable property, and deliver it forthwith to the plaintiff, thereby effecting in the most summary manner an entire change in the possession thereof; and perhaps, leave the lawful owner without remedy.

The legislature by the act of 1833 did undertake to legalize this writ, and made provision for its use, in other cases than distress for rent. But the act was repealed, generally, in 1836. Thus we have both the authority of the courts, and of the legislature, against the use of this writ, as a remedy for the recovery of the possession of goods and chattels, except as provided for in case of distress for rent. And even in the latter case the landlord, who claims his rent, cannot distrain himself, in his own proper person, but must make oath, and give bond, as provided in the act of 1822, Rev. Code, ch. 17, p. 168, and ch. 18, p. 174, and obtain an attachment to be executed by the sheriff, who is authorized to make sale of the attached property if not replevied by the tenant; the person replevying is to give bond and security—all which is to be returned into court where "an issue is to be made up" to try the merits of the case.

The judgment is affirmed.

Mr. Chief Justice SHARKEY.

In this particular case, I agree that it is proper to affirm the judgment of the court below—because there is not the least pretence that the taking was tortious, and replevin will not lie unless there has been a tortious taking. But I dissent from the general proposition laid down, that replevin does not lie in this state ex-

cept in cases of rent. Replevin is undoubtedly one of the common law actions, and lies in every case where there has been a *tortious* taking of personal property. See Shannon *v.* Shannon, 1 Sch. & Lef. 324; 7 Johns. Rep. 142; Baker *v.* Fales, 16 Mass. Rep. 147; Co. Litt. 145, b.; Wheaton's Selwyn, 1193, et. seq. The common law may be defective in regard to the bond or pledges which the sheriff is required to take, but such defect is surely not enough to justify us in holding that the action is obsolete. The same might be said of other actions, but this is no reason why they do not exist here at all. If we have the common law in force here, then we must have all the common law remedies which are not repugnant to the spirit and form of our government, or which are not abolished by some statute. The action of replevin is neither abolished, nor is it repugnant to our constitutional form of government. On the contrary, I think it is a highly expedient remedy. It is the only one known to our law which secures an immediate restoration of chattels wrongfully taken. The action of detinue is attended with delay, but this is not. I admit that legislation is wanting, in order to require the sheriff to take a sufficient bond to indemnify the defendant; but it cannot be said that the action cannot be carried out without such legislation. It existed at the common law with the same imperfections that it is subject to here, to remedy which the statute of Walbridge was passed, requiring the sheriff to take a sufficient bond to indemnify the defendant. Nor will it do to say that our courts have not jurisdiction. The circuit courts have general common law jurisdiction, and this is peculiarly of that character. Even in England, whenever there was a contest about the right of property replevied, it was tried in the common pleas. I am consequently of opinion that the action is a proper one, and not only proper but highly useful, and ought not to be abolished either by legislative enactment, or by judicial interpretation.