Matthews *vs.* Poythress.

4  287<br>
e120 487

No. 32—Jubal Matthews, plaintiff in error, *vs.* Joseph Poythress, defendant in error.

[1.] It is not error in the Circuit Judge, in his charge to the Jury, to instruct them as to questions of law, which are raised by counsel in their address to the Jury, or to instruct them as to what he may believe perversions by one counsel, of legal positions assumed by adverse counsel before the Jury.

[2.] A witness who testifies generally in affirmative terms, that a party did not receive value for the transfer of a promissory note, without limitation or qualification, as to witness' knowledge, or as to time, or place, is a *negative* witness; and is not to be believed in preference to a witness who swears affirmatively, that such party did receive value in the transfer of the note.

[3.] If a witness be liable to a third person, who is liable to the party calling him, he is a competent witness; such circuity of interest is not sufficient to disqualify him.

[4.] The purchaser of a bill, note or other negotiable security, transferable by delivery, who takes it before it is due, from one who himself has no title *bona fide* and for value, acquires a good title. *Held*, farther, that such title is not defeated by the want of such caution in the purchase, as a careful and prudent man would exercise in the conduct of his affairs, or by *gross negli gence*, but that it may be defeated by *mala fides* in the purchase, and that *mala fides* consists in notice, actual or constructive, of the fact, that the security is not the property of the person who offers it, and a privity with or participation in a fraud upon the true owner. *Held*, also, that proof of want of proper caution, or *gross negligence*, or of any other fact which

Matthews *vs.* Poythress.

goes legitimately to show *mala fides,* may be submitted to the jury, subject to the direction of the Court as to the law of the case. *Held,* that it is proper for the loser of a bill or note to give immediate notice to the parties on it, and to the public of its loss; but public notice, not brought home to the buyer, will not affect his title, nor will the failure to give public notice preclude the loser from showing that the buyer took the bill or note *mala fide.*

Trover for a note. Tried before Judge HILL, in Troup Superior Court, October adjourned term, 1847.

This was an action of Trover, brought by the plaintiff in error against the defendant in error in the Court below. Upon the trial, it appeared that one Simon Peteet made and delivered his promissory note to plaintiff for three hundred dollars, dated the 16th October, 1844, payable to the plaintiff or bearer, and due the 25th December, 1845. On the 18th October, 1844, Peteet paid $72 on the note to plaintiff.

The testimony on the part of the plaintiff proved, further, that plaintiff deposited the note for safe keeping with one Mrs. Jones, of Columbus, Georgia, whose husband took it from her without plaintiff's knowledge, and that Jones, the husband, and one Allen, carried the note to Lagrange, Georgia, and transferred it to the defendant, who afterwards admitted that Jones and Allen were both strangers to him, and that he did not like their appearance; that he became suspicious, and thought the note was not genuine, or that the maker was not solvent, made enquiries as to the genuineness of the note, and the solvency of the maker only, and becoming satisfied upon these two points, took the note; that he (the defendant) did not like the *appearance* nor the *manner* of the men, (Jones and Allen,) nor their conduct in stepping aside and conversing privately during the trade. He did not like their dress. One had rings in his ears. Defendant made no enquiry as to title. Before they left, he suspected a fraud existed somewhere.

Plaintiff farther proved possession of the note in defendant, and demand and refusal; and that he had never received any consideration for the note at any time; and that it was traded without his knowledge or permission.

It was proven, on the part of the defendant, by Jones and his wife, that Mrs. Jones gave plaintiff value for the note, in the way of board, clothing, &c., that she and her husband were *very poor,*

Matthews *vs.* Poythress.

and that Allen sold the note to defendant upon the recommendation of Jones, (the husband,) at about 16 per cent. discount. Defendant purchased the note before it became due.

The testimony of Jones and his wife was objected to by the counsel for plaintiff on the ground of interest.

1st. Because it was to the interest of said Jones and his wife to swear that they, or one of them, had given a valuable consideration for said note, and *that* interest was to be determined by the verdict to be rendered by the Jury in the cause.

2d. Because, from the testimony of Jones and wife, it appeared that said witnesses were the vendors of the vendor of the defendant, and therefore a release from defendant to said *witnesses* would not reach their liability.

The Court below overruled the objections.

1st. Because the witnesses' testimony, being called by the defendant, was *against* their interest.

2d. Because their liability through the vendor of defendant, was too remote.

To which decision counsel for the plaintiff excepted, &c.

The testimony on both sides having closed, the Court below charged the jury that a loser of a negotiable instrument, when the same was proven to be in the hands of a purchaser for value, and before due, in order to recover said instrument from the possession of such subsequent purchaser, it is incumbent on the plaintiff to show *mala fides* in the purchaser, and whether said purchaser has paid a valuable consideration or not; and whether he purchased it from a thief, stranger or other person, is a matter of no consequence to the plaintiff, if the other ground of defence be true, that is, if plaintiff had shewn no title, or that he had parted with his title to the note for value. And that *mala fides* is not a want of prudence, nor is it gross negligence, nor a mere suspicion (without reason for such suspicion) as to the honest character of the vendor; but it *(mala fides)* is a *reckless* disregard of, or indifference to the rights of all persons but himself (the purchaser) in the transaction; an indisposition to take care of or care for the rights of any previous holder; and the plaintiff in this action *must prove* this reckless disregard or indifference in the defendant, before he is entitled to recover. That when a person, not the payee of a note, presents it for sale, negotiation or discount, and the person to whom it is presented has suspicions only

as to the genuineness of the note or the solvency of the maker, it is only necessary to enquire as to such genuineness or solvency, and not as to the character of the title. That the mere fact of a person presenting a note not due, being a *stranger,* or mere general suspicions (without any reason existing to excite suspicions in a reasonable mind) in the mind of the purchaser, even though the person presenting or offering to sell, be not the payee of the note, were not sufficient to put the purchaser on enquiry as to title, and a failure to make such enquiry is not such *mala fides* in the purchaser as will enable or authorize the loser to recover.

The Court further charged the Jury, that the witness Scroggins, who had sworn that the Plaintiff had *never received* value for said note, was a *negative witness,* and should not be believed in preference to those who *swore positively* that *he had received* value.

That he (Scroggins) *had sworn* to *that which he could not know,* and should not be believed in preference, until he had shewn that he was with the plaintiff from the time Jones received the note, to the time of the deposition. And the Court below further charged the Jury, at length, upon the rules of law for construing the testimony in said cause, and as to the character of the arguments used by plaintiff's counsel arising from the testimony; alleging misconstructions were made by plaintiff's counsel of arguments, used by defendant's counsel upon the rules of law governing the facts in said cause; and charged the jury, wherein various positions taken by plaintiff's counsel in weighing the testimony were not authorized by the rules of construction in said case. To all which the plaintiff's counsel excepted.

The counsel for plaintiff asked the Court further to charge the Jury, that a person purchasing a negotiable instrument, and *suspecting fraud,* the purchaser is guilty of *fraud* if he purchase it. Which the Court below first refused to charge, viewing it as an abstraction, and then charged that such suspicions must be shewn to be on reasonable grounds, or such as might excite suspicion in a reasonable mind, and such as to evince in the purchaser a reckless disregard of the rights of all other persons in the instrument. To which plaintiff's counsel excepted, and asked the Court below further to charge the Jury, that in a case of *mala fides* in the purchaser, it is not necessary to prove notice of the loss by the loser, which the Court charged, and added, that though in such case a failure to prove notice of the loss was

not a bar to the recovery of plaintiff, yet it was evidence of a gross negligence on his part, in failing to make enquiry as to the title of the vendor, by a purchaser of a note not due. And the counsel for plaintiff excepted.

Upon these several exceptions the errors complained of are assigned.

B. H. HILL, for plaintiff in error, made the following points, and relied upon the authorities cited.

1st. The witnesses, Jones and wife, being parties to the title of the note sued for, (though not parties to the record,) and the *title* being the material question to be established by the record, are interested in the record, and therefore, incompetent to prove title in themselves, or in those claiming under them.

2d. The purchaser of a note payable to bearer, or to order, and endorsed in blank, is presumed in law to be a *bona fide* purchaser for value, and as such, not subject to the equities existing between previous or original parties to the note; but such presumption is *prima facie* only, and not *conclusive*; and if, in a suit between the loser of such note and the purchaser, it be shown that the note was received under circumstances of suspicion from a holder not the payee of the note, without due care, caution, and diligence, and without enquiries as to the title of such holder, such purchaser is accountable to the loser for the note, or its value; nor is it necessary for the loser to prove absolute, positive *mala fides* in such purchaser; and this rule is of general application, whether the note be transferred before or after it fall due. *Snow vs. Peacock*, 3 *Bing.* 406. *Gill vs. Cubitt*, 3 *Barn. & Cress.* 466. *Slater vs. West*, 14 *Eng. Com. Law*, 330. *Easley vs. Crockford*, 25 *E. C. L.* 116. *Egan vs. Threlfall*, 16 *E. C. L.* 3 *Kent*, 81. *Ayer vs. Hutchins*, 4 *Mass.* 370. *Thompson vs. Hale*, 6 *Pick.* 259. *Bank of St. Albans vs. Gilleland*, 23 *Wend.* 311. *Wheeler vs. Guild*, 20 *Pick.* 545. *Coddington vs. Bay*, 20 *John.* 637, *et passim.*

3d. If a person discount a note for gain, for a *stranger* who is not the payee of the note, or under any other reasonable grounds of suspicion, without making enquiry as to how such person came by the note, or without exercising any vigilance or caution to ascertain the true character of the transaction before he discounts

or takes the note, such purchaser fails to act in good faith to the true owner, or the public, and therefore takes the note at his peril. *Ib.*

4th. *Mala fides* is simply bad faith, or want of confidence in the *bona fides* and honesty of any transaction, and if a person receive a note from a stranger or other person who is not the payee of the note, under a suspicion of fraud, or under a want of confidence, or bad faith in the *bona fides* and honesty of the negotiation in any particular, such person so receiving the note, whether before or after it becomes due, is not, in contemplation of law, a *bona fide* purchaser, but is guilty of *mala fides,* and upon other proof of the loss or theft of said note, is liable over to the true owner for the note or its value. Nor is it necessary for the loser, in order to establish *mala fides,* to go farther, and prove that such purchaser acted with " a reckless disregard of, or indifference to the rights of all other persons in the instrument, an indisposition to take care of or care for the rights of any but himself in the transaction." *Backhouse vs. Harrison,* 27 *E. C. L.* 276. *Crook vs. Jadis,* 27 *E. C. L.* 234. 2 *Bouvier, title, mala fides. Miller vs. Race,* 1 *Bur.* 169. *Lawson vs. Weston,* 4 *Esp.* 56.

5th. In a suit between the loser of a negotiable promissory note, and a subsequent purchaser, it is sufficient evidence of *mala fides* in the purchaser, to show that he received the note under a belief or suspicion of fraud in the negotiation, or with bad faith in the transaction, and it is not necessary to go farther and prove that such suspicions were reasonable, or such as might exist in the mind of a reasonable man.

6th. Notice is *actual* or *constructive ;* and in a case of *mala fides* in the purchaser, it is not necessary to prove actual notice of the loss by the loser, nor is a failure to prove such notice, in such case, any matter of defence, set off, or excuse for the purchaser. *Story on promissory notes,* §197. *Cone vs. Baldwin,* 12 *Pick.* 545. *Hall vs. Hale,* 8 *Conn.* 336. *Chittty on Bills,* 259. *Snow vs. Peacock,* 13 *E. C. L.* 26.

7th. A negative witness is distinguished by the *quality,* and not by the *language* of his testimony, and when one witness affirms a fact, and another denies it, neither is in law a *negative* witness, but it creates a question of credit and veracity for the consideration of the jury. 1 *Starkie on Evidence,* 579.

8th. The probability, sufficiency, or insufficiency of testimony,

are questions entirely for the consideration of the jury; and the Court has no right to tell the jury, *per nomine*, which witness is or is not entitled to credit; the weight and character of the testimony, as well as the credit and veracity of the witnesses, being left entirely for the decision of the Jury.    1 *Starkie on Evidence*, 539.

9th. It is the province of the Court to give the jury in charge the rules of law applicable to the case; but the jury must make the application; and the court has no right to take up counsel, *per nomine*, or *per argumentis*, and tell the jury which shall or shall not be believed; nor has the Court the right to show, or *attempt* to show the jury, wherein one counsel misconstrued arguments of opposing counsel, either upon the law or the facts, it being the province of the Court to charge the *law*—the jury to determine the facts and apply the law so charged to the facts so determined, and in said process, giving to the arguments of counsel such consideration as they think applicable in the illustration, application, or exposition of the law and testimony.

BULL, for the defendant in error.

A *bona fide* holder of a note, transferable by indorsement or delivery, may recover on the note, though it may have been fraudulently obtained from the original holder, provided he obtained it before due, for a valuable consideration, and without notice of the fraud.    *Lawson vs. Weston*, 4 *Esp.* 56.    *Grant vs. Vaugn*, 3 *Bur.* 1516.    5 *Bar. & Ald.* 909.    4 *Adol. & Ellis*, 870.    6 *Mass.* 428.    4 *Ib.* 45.    1 *Hill's Rep. (S. C.)* 39.

Gross negligence in the purchaser of a note is not sufficient to defeat his title.    4 *Adol. & Ellis*, 870.    10 *Ib.* 784.    There must be *mala fides*.

*By the Court.*—NISBET, J. delivering the opinion.

There are as many as twelve specifications of error in the assignment in this case.    I shall endeavor to condense and simplify them as I proceed, without omitting to notice any one principle involved.    The plaintiff in error insists—

[1.] That the Circuit Judge erred in instructing the Jury as to the character of arguments used by the counsel for the plaintiff,

before the Jury, arising from the testimony.  This exception presents no point of law upon which the Court is charged to have committed error.  It goes to the right of the Court to comment, in its charge, upon positions taken by counsel, in their arguments to the Jury.  It is the right of the Court to give the law of the case in charge to the Jury; it is more—it is the duty of the Court.  And if in the argument, legal positions are taken by counsel, which in the judgment of the Court are wrong, I see no sort of objection to the Court's instructing the Jury, according to its judgment of those positions.  Nor does it matter whether those positions arise out of the facts or the pleadings, or are extrinsic to both.  It is the duty of the Court to advise the Jury as to all the law which, in its judgment, relates to the case.  If it errs as to the law, no matter how the instructions may originate, the parties have their remedy by writ of error.  It is also the privilege of the Court to sum up the evidence to the Jury, to declare the law which results from a given state of facts, and to announce the rules by which testimony is to be weighed, reconciled and estimated by the Jury.  If in so doing, if in commenting on the argument of counsel, the Court should *instruct* the Jury as to what are the facts proven, or that they must find them for the one party or the other; it would depart from its appropriate sphere, and this Court would apply the correction.  Such is not charged to be the error of the Court in this case, and we do not consider that this exception is well taken.

The second exception in the order in which I notice them, is of like character with the first.  It is, that the Court erred in this—that it charged the Jury that misconstructions were made by the plaintiff's counsel, of the argument of the defendant's counsel, *touching rules of law*, growing out of the facts of the case.  My reply to this assignment is made in what I have already said relative to the first.

[2.] It is farther claimed to be an error in the Court, that it charged the Jury, that the witness Scroggins was a *negative witness*, and *therefore* should not be believed, in preference to a witness who swore positively, touching the same subject-matter.  This was Trover for a promissory note, which the plaintiff had placed in the hands of a Mrs. Jones, as the witness Scroggins stated, for safe keeping; and which was fraudulently negotiated, and finally came to the hands of the defendant.  The plaintiff, in

Matthews *vs.* Poythress.

endeavoring to make out his case, introduced the interrogatories of the witness Scroggins, who among other things swore, *that the plaintiff had never at any time received any consideration for the note.* Mrs. Jones was afterwards sworn by commission in behalf of the defendant, who testified that she took the note from the plaintiff in payment of a debt due by him to her. Judge Hill instructed the Jury that Scroggins was a negative witness, and was not to be believed in preference to the witness, who swore positively that the plaintiff did receive a consideration for the note, in the payment of a debt due by him to her. Beyond all controversy the Judge was right in both positions. It is true, that in the terms in which Scroggins testifies, he without qualification or limitation, asserts a negative. A rash thing for any witness to do. What no intelligent and honest witness will venture to do, except in cases that are very rare and very peculiar. Still, the witness is called to prove that a given thing was *not* done, to-wit: that a consideration was *not* received by the plaintiff for the note. It is a matter about which it is useless to reason, and the light of which, attempted illustration would darken. It was negative testimony. Of two witnesses testifying, one affirmatively, and the other negatively, the testimony of the former is to be preferred to that of the latter, as a general rule. Nor does this rule impeach the credibility of the negative witness. The fact may be, as proven by the affirmative witness, and still the negative witness swear truly. Thus, one witness swears that he saw or heard a fact, and another, who was present, swears that he did not see nor hear it. Both are to be taken as swearing truly. And if both are equally credible, the general principle would create a preponderance in favor of the affirmative. The affirmative testimony being true, the falsity of the negative testimony is to be attributed to inattention, defective memory, or mistake. So too, if one witness swears affirmatively that a certain thing was done, and another swears that *within his knowledge,* it was not done, both may swear truly—the thing, although not done within the knowledge of the negative witness, may still have been done. As in the case before us; suppose that one of the witnesses had sworn that the plaintiff did positively receive a consideration for this note, and the other, that within his knowledge, the plaintiff did not receive a consideration for it—or at a given time and place, he did not receive a consideration for it. Both witnesses may be well held

as swearing truly.   But the preponderance is, unquestionably, to be given to the affirmative testimony; because, although not known to the negative witness, at some other time and place, he may have received a consideration.   At the same time, evidence of a negative character, may, under peculiar circumstances, not only be equal, but superior to positive evidence.   For example, two persons are placed in a room for the express purpose of ascertaining by their senses, whether a clock placed therein would strike—and they testify, that within a given time, it *did not* strike; whilst a third person testifies, that within the specified time, it *did* strike.   In this case, reason could not attribute the variance in evidence, to inattention or mistake in the two.   She must needs award the preponderance in favor of the negative witness.   The case, however, before us, is stronger in favor of the positive testimony, than any I have put.   Here one witness swears directly to an affirmative fact, to-wit: that the plaintiff did receive a consideration for the note; the other swears that he did not, generally, without qualification as to the witness' knowledge, and without limitation as to time or place.   To place the latter testimony upon an equality with the former, the witness must be invested with omniscience.   He swears that the plaintiff never did receive a consideration for the note in question.   How could he know that, unless from the time the note was made, until the moment he is sworn, he was present with the plaintiff, and all the time exercising the most intense observation, and the most unrelaxing vigilance.   We are clear that the Court correctly instructed the Jury, that he was not to be believed in preference to the other witness.   1 *Starkie on Evidence*, 517, 518.

[3.] The defendant tendered in evidence, the depositions of Mrs. Jones and her husband, John E. Jones, to prove that he gave a valuable consideration for the note, and that the plaintiff had himself transferred it to them, and received a consideration for the transfer; and at the same time, exhibited a release to the witnesses.   The plaintiff demurred to the admissibility of this evidence, upon the ground that the witnesses were interested, notwithstanding the discharge, because they had sold the note to one Allen, who sold it to the defendant.   And although the witnesses had been released by the defendant, yet, if the plaintiff succeeded, Allen would be liable to the defendant as his immediate vender; and they, the witnesses, would be liable over to Allen as his ven-

ders. They were therefore interested in favor of the defendant. The presiding Judge overruled the demurrer, and admitted the evidence, saying that if interested at all, the witnesses were interested to testify in favor of the plaintiff—and that the interest growing out of their liability to Allen as his vendors, was too remote to exclude them. This decision is excepted to.

The rule upon the subject of interest is thus laid down by this Court, in *Bailey vs. Lumpkin*, 1 *Kelly*, 405 : " The disqualifying interest of a witness, must be some *legal, certain* and *immediate* interest, however minute, either in the event of the cause itself, or in the record as an instrument of evidence in support of his own claims, or against him in a subsequent action." 1 *Greenleaf's Evid.* Sect. 386. 1 *Stark. Evid.* 102. The test of his interest in the event of the suit, is, *will he gain or lose by the direct legal operation of the judgment.* 1 *Greenleaf, Sect.* 390. *Gilbert's Evid.* 225. 3 *C. R.* 27. *East*, 580. It is not pretended that these witnesses would be excluded by the former part of the rule —that is, it is not pretended that they are interested in the event of the suit. They could not gain or lose by the direct legal operation of the judgment. Whether the judgment be for the plaintiff or the defendant, they would not thereby make or lose, directly, one cent. If they are interested in the way claimed by the plaintiff's counsel, it is because the record of recovery for the plaintiff, would be evidence against them, in a suit against them by their vendee Allen. A judgment is conclusive only upon parties and privies. These witnesses are not in privity with the defendant. Nor could the judgment in favor of the plaintiff in this suit, be admitted as evidence, by way of inducement, in a suit brought by Allen against them. Whether it could or not be thus admitted, in a suit brought by this defendant against his vendor, Allen, I shall not now say; but am very clear it could not, in a suit by Allen, against them. The interest, by the rule, must be legal, certain and *immediate* in the record. Here, if at all interested in this record, it is not an *immediate* legal interest, but remote and contingent. It depends first, upon a recovery here against the defendant; and second, upon an after recovery by the defendant against Allen. It is neither a legal interest, a certain or an immediate interest. There is a class of cases analagous to this, in which the witness would be excluded, and to which this case might seem to belong, but to which it does not

belong; where the event of the suit, if adverse to the party calling the witness, will render the latter liable either to a third person or to the party himself. In such cases the witness is incompetent, because the judgment is competent to prove the special damages of the party against whom it goes, in a subsequent action against the witness. Thus, in an action against the principal, for damages, occasioned by the neglect or misconduct of his agent or servant, the latter is not a competent witness for the defendant, without a release; because of his liability over to his master or employer, in a subsequent action to reimburse; in which action the record of the judgment in the first suit, will be received to prove the amount of the damages therein recovered. The rule applies to all cases where the same relationship exists between the witness and the party who calls him. In all such cases, the direct legal effect of the testimony must be to place the witness in a situation of security against a subsequent action. If the effect of the testimony is not direct, it does not disqualify. Not only so, but the *liability* of the witness must be direct and immediate to the party, " for, (says Mr. Greenleaf,) if the witness is liable to a third person, who is liable to the party, such circuity of interest is no legal ground of exclusion." 1 *Greenleaf's Ev. Sec.* 394. *Clark vs. Lucas, Ry. & M.* 32, which happens to be precisely the case in hand. We conclude then, that the liability over to their immediate vendee, who would be liable to the defendant if he failed in the action, is not such an interest as to disqualify these witnesses. This being conceded, how do the witnesses stand affected to the immediate parties? They cannot be liable to the defendant, because he has released them. If the plaintiff fails, it is possible he may go upon them for the fraudulent appropriation and sale of his note; and it may be considered that their interest is in favor of the plaintiff, and against the party calling them; and if so, they are competent. We do not find that this exception was well taken.

[4.] The presiding Judge instructed the Jury, "that the loser of a negotiable instrument, when the same was proven to be in the hands of a purchaser for value, and before due, in order to recover said instrument from the possession of such subsequent purchaser, must prove that he purchased said instrument *mala fides.*" And farther, "that *mala fides* is not a want of prudence, nor is it gross negligence, nor mere suspicion without reason for

Matthews *vs.* Poythress.

such suspicion, as to the honest character of the vendor; but it is a reckless disregard of, or indifference to the rights of all persons but himself in the transaction, which recklessness and indifference the plaintiff must prove." And that "where a person, not the payee of a note, presents it for sale, negotiation, or discount, and the purchaser has suspicions only of the genuineness of the note, or the solvency of the makers, and not as to the character of the title, the mere fact of the person presenting a note not due, being a stranger, or even general suspicion, (without any reason existing to excite such suspicion in a reasonable mind,) are not sufficient to put the purchaser upon enquiry as to the title; and that a failure to make such enquiry under such circumstances, is not such *mala fides* as will enable the loser to recover."

To all these propositions the plaintiff in error has excepted, and I understand him to maintain, as antagonistic propositions:

1. That in the case, as stated by the Judge, in order to the recovery, it is *not* necessary to prove *mala fides* in the holder, but it will be sufficient for him to prove that the holder *took the note under circumstances which ought to have excited the suspicions of a prudent and careful man.*

2. That if it be necessary to prove that the holder took the note *mala fides,* then one taking a note, with mere suspicion of fraud as to the title, is guilty of *mala fides.*

3. That *gross neglect* in the holder of a negotiable instrument, taken under such circumstances, is *mala fides,* and will defeat his title.

4. That a person receiving a note not due, from one who is not the payee, and having suspicion *only* as to the genuineness of the note and the solvency of the maker, is put upon enquiry as to the title, and if he fails to make enquiry, does not acquire a good title to it.

I shall not undertake to consider all these specifications with separate particularity, but shall endeavor to establish such general rules, as will embrace them all. The note, in this case, was transferred to the defendant before maturity, and he gave for it a valuable consideration. The property in paper, payable, as this was to bearer, as a general rule, accompanies the possession.— Without such a rule, the ends to be accomplished in the mercantile world by them, could not be attained. They are negotiable securities, and are intended to enter into and constitute a part of

Matthews *vs.* Poythress.

the circulation of the country. The benefits of such a rule are well understood. The negotiability, and of course the availability of notes, as a medium of circulation, would be greatly limited if hindrances were thrown in the way of a good title. The Courts in England have been inclined to facilitate rather than impede the negotiability of such instruments. The doctrines of those Courts are liberal in favor of the title of the holder, as we shall see, and to my mind are well founded in commercial expediency. For one, I am not at all disposed to break down, but at the bidding of the Legislature, the wise and well considered rules of the Law Merchant. That it is occasionally necessary to accommodate them to our commercial and political system, and to the somewhat variant habits of our people, is admitted. But as a system, I question, whether, by frequent changes, we are likely to improve it. Nothing can be more desirable than permanency in those laws, which regulate the business of the country. And a rule which has the effect of destroying or restraining the circulating qualities of bills and notes, whether established by the Legislature or the Courts, is to be deprecated. At the same time, the rights of the loser of a note are to be protected, so far as they can be without violating general principles which long experience have proven to be salutary. Again, it is a well established rule of law, that if one of two innocent persons are to suffer loss, it shall fall upon him whose negligence, or credulity, or misplaced confidence has occasioned it. As to what shall be proven, in order to defeat the title of the holder of a note, which has been lost, or stolen, or otherwise put into circulation in fraud of the rights of the first owner, the English authorities, I am free to admit, are greatly in conflict. Notwithstanding, I do not hold it at all difficult to derive from those authorities the rule which must be obligatory upon this Court. The rule of the Common Law, which was established before, and in force at the time we adopted it, must control this tribunal, even if it was, as in this case it is not, adverse to our own views of what it ought to be. To state, then, our opinion of the *history* of this question: We believe, that at the date of our adopting statute, the Common Law was in accordance with the opinion of Judge Hill, that it subsequently was modified, in accordance with the first proposition of the plaintiff in error, and that at this time the old rule is of force.

The original rule, as to the rights of a holder, we state to be this : " If the owner of a foreign or inland bill of exchange, check, bank note, or other note, transferable by mere delivery, lose, or be robbed of it, and it get into the hands of a person not aware of the loss or robbery *bona fide*, and for a *sufficient consideration*, previous to its being due, such person, notwithstanding he derived his interest in the instrument, through the person who found or stole it, may maintain an action against the acceptor or other parties, and the original owner who lost it will consequently forfeit all right of action." The question is stated in reference to the right of the first owner, and the subsequent purchaser, to sue and recover on the instrument. The question is the same, where the action is for the instrument itself, as in this case, it being, *which has the property in the instrument ?* The cases put in the above rule are cases of loss and theft; the principle is the same, where in any other way a bill or note is put into circulation, in fraud of the owner. The principle here asserted is this : " the holder of bills of exchange or other instruments negotiable by delivery, can give a title which he does not himself possess, to a person taking them *bona fide, and for value."* If the purchaser has taken the instrument *bona fide*, and paid value, he is *prima facie* the owner, and the ownership must be denied by the defendant in a plea that he has taken it *mala fides*, which plea must be supported by evidence. As early as the reign of *William III.* we find *Holt, C. J.* determining as follows : "A (the original owner) may have trover against a stranger who found the lost bill, for he had no title? but A cannot maintain trover against C, (the transferree for value,) by reason of the course of trade which creates a property in the assignee or bearer." 1 *Salkeld,* 126. *Also,* 3 *Salkeld,* 71.

In 1758, in *Miller vs. Race, Lord Mansfield* held that a Bank note, although stolen, becomes the property of him who gives valuable consideration for it, having no *notice* or *knowledge* of the robbery. This case is usually held the starting point of the current of authorities upon this subject; it was argued on both sides by the ablest men of the English bar of that day, and maturely considered by the Court. *Lord Mansfield* in this case cited a number of previous cases, but this being decided anterior to our declaration of independence, it answers my present purpose to make it the leading case. 1 *Burrow,* 452. It settles the point, that he who purchases a negotiable instrument *bona fide*, for a

valuable consideration, from one who has stolen it, without notice or knowledge of the theft, acquires, upon the principles of the Law Merchant, a property in it, paramount to that of the original owner. The points in this case are, *value paid,* and the *absence* of *notice,* or *knowledge of the theft.*

In *Lawson vs. Weston,* a bill had been lost, and the loser had advertised it in the newspapers, and it was discounted by the plaintiff, who was a banker, for a stranger, who upon being required, wrote a name upon it, whereupon no further question was asked. *Lord Kenyon* held, that the plaintiff ought to recover, upon the authority of *Miller vs. Race.* His Lordship said, "if there was any fraud in the transaction, or if a *bona fide* consideration had not been paid by the plaintiffs for the bill, to be sure they could not recover, but to adopt the principle of the defence, to the full extent stated, (namely, that the bill being for so large a sum, *further enquiries ought to have been made,)* would at once be, to paralyze the circulation of all the paper in the country, and with it, all its commerce. The circumstance of the bill having been lost, might have been material, if they could bring knowledge of that fact to the plaintiffs. The plaintiffs might or might not have seen the advertisement. It would be going a great length to say that a banker is bound to make enquiry concerning every bill brought to him for discount." 4 *Esp. Reps.* 56.

According to this authority, when a bill, which has been lost, is presented for discount by a stranger, if the purchase is *bona fide* and for value, the buyer is not put upon enquiry. *That* was the defence, and that is the position which is most earnestly insisted upon, by the plaintiff's counsel in the argument of the cause now being considered. It was excluded by *Lord Kenyon,* because "it would paralyze the circulation of all the paper of the country, and with it, all of its commerce." In *Grant vs. Vaughn, Lord Mansfield* affirmed the decision which he had made in *Miller vs. Race,* and ruled, that if the jury believed that the plaintiff took the note *fairly* and *bona fide,* he was entitled to recover. In this case, the different members of the court gave opinions at length, and the doctrines involved were canvassed with great ability, and all concurred in the judgment. Two things I note in this case; the first is, that receiving a note *fairly and bona fide,* includes *want of notice of its loss;* this seemed to be implied in what was said in *Miller vs. Race;* here *Lord Mansfield* expressly so states. Now the inference, which may

be, without violence, drawn from it, is this ; that according to these early cases, notice or knowledge of the loss, or theft, or other unlawful means, by which the transferrer became possessed of the note, was the true and only ground upon which the purchaser's title could be defeated. The other matter, worthy of notice, is the authority which it contains from *Lord Hardwick*, another of the great names of British jurisprudence, to the doctrine which the case itself establishes. Upon the authority of *Lord Mansfield* a case came before *Lord Hardwick* in Chancery, as follows : A note payable to bearer was lost or stolen, and payment stopped by the true owner, who demanded that it should be paid to him. The maker refused to pay it, without surety against the demands of a *future bearer*. The true owner brought a bill which *Lord Hardwick* dismissed, unless the true owner would find security ; upon the principle *that no dispute ought to be made with the bearer of a cash note, who comes fairly by it, for the sake of commerce, to which the discrediting such notes might be very detrimental.*

The same doctrine was held by *Eyre, Ch. J. in Collins vs. Martin.* In that case a customer deposited with his banker, bills indorsed in blank, to be collected and passed to his account; the banker pledged them to a third person, and became bankrupt. It was held that the original depositor could not maintain trover, for the bills against the pledger. 1 *Bos. & Pull.* 648. I find but few decisions in the American Books, directly upon the question. The old Common Law decisions seem, however, to be recognised by such as have come under my observation. In *Wheeler vs. Gould,* it was decided, that where a person takes a promissory note transferrable by delivery, and not overdue, or otherwise dishonored, for a valuable consideration, in the course of business, and without actual or constructive notice that the holder has no right to receive it; his title thereto is valid, although the note may have been lost or stolen from the true owner. 20 *Pick. R.* 545. In *Thurston vs. McKown, Parsons, Ch. J.* held, that where a note was obtained by unfair means from the maker, he was still liable to an indorser who had obtained it *bona fide* for a full consideration, and without any knowledge of the fraud. 6 *Mass. R.* 427. The Supreme Court of New York recognised the case of *Grant vs. Vaughn,* in *Woodhull vs. Holmes,* 10 *Johns. R.* 230. In *Proctor vs. McCall,* Chancellor *Harper* says : " If a bill or note be lost or stolen, or by equal reason obtained from the true owner

Matthews *vs.* Poythress.

by fraud, payment will be good, if the maker or drawer had no notice of the circumstances." 2 *Bailey, S. C. R.* 301. From these authorities, I consider it clear that the rule, as at first stated, and which I extracted from the text of Mr. Chitty, was the Common Law rule in 1776, and that it has been recognised by some of the first courts of our own country. A summary of the authorities is as follows: *Ld. Raymond,* 738. 1 *Salkeld,* 126. 3 *Ibid,* 71. 9 *Mod.* 47. 1 *Burrow,* 452. 3 *Burrow,* 1516. *Douglass,* 633. 2 *Show.* 235. 4 *Esp. R.* 56. *Dow & R. C. N. P.* 50. 2 *Camp. R.* 5. 2 *Ibid,* 274. 13 *East,* 130. 1 *Rose,* 99. 4 *Taunt.* 114. 13 *Peters' S. C. R.* 318. 3 *B. & C.* 47. *Smith's M. Law,* 179, 180. 4 *B. & A.* 1. 3 *Bing.* 610. 5 *Binney,* 469. 3 *Watts,* 20. 4 *Watts & Sergeant,* 445. 5 *Pick.* 412. 3 *Johns. Cas.* 259. 10 *Johns.* 231. 2 *Ibid* 50. *Chitty on Bills,* 254 *to* 258, *and notes.* 1 *Smith's Leading Cases,* 365 to 367.

But in 1824, the case of *Lawson vs. Weston* was overruled in the Court of King's Bench. In *Gill vs. Cubit,* the rule which is claimed by the counsel for the plaintiff in error was established, to-wit: "That the holder of a lost or stolen bill or note, acquires no title, if he takes it under circumstances which would excite the suspicions of a prudent and careful man." *Abbot, C. J.* declared that the case of *Lawson vs. Weston,* was inconvenient to commerce, because it gave encouragement to the purloining, stealing, and defrauding rightful owners of their bills and notes, and by the facility which it afforded to their disposition. And that it was not to the interest of commerce, that any individual should be enabled to dispose of them, without being subject to enquiry. By this case, the caution which should characterize a prudent man in the conduct of his affairs, was imposed upon the buyer, in addition to paying value, and buying *bona fide. Bailey, J.* was of opinion that such caution was part and parcel of the *bona fides* of the transaction, and that the older cases, *Miller vs. Race,* and *Grant vs. Vaughn,* and others, so held. By this rule, it will be seen, a new element of title is introduced. The prior cases seem to me to rest upon the general elements of title, to wit, negotiability, prematurity, *bona fides* and valuable consideration. Here, however, we find the Court of King's Bench, adding to the Law Merchant a rule, by virtue of which, in addition to these, the buyer of notes and bills is held to a very vague and indefinite amount of diligence, to say the least of it. A rule, which, we shall see,

Matthews *vs.* Poythress.

was found inconvenient in its practical operation, and was finally repudiated. The case, however, of *Gill vs.(Cutit)*was sustained*Cubitt* by numerous subsequent decisions. 3 *B. & C.* 466. 5 *D. &. R.* 324. 1 *Car. & P.* 162. 4 *B. & C.* 330. 6 *D. & R.* 455. *See also* 3 *Bing.* 406. 11 *Moon,* 286. 2 *Car. & P.* 215. 3 *Bing.* 444. 3 *Ibid,* 610. 6 *Ibid,* 677. 4 *Moore & P.* 470. 3 *Car. & P.* 325. 9 *B. & C.* 208.

In the recent cases, the authority of *Gill vs. Cutit* was first shaken by modifications of the rule therein adjudged, and finally overthrown, and the authority of the old cases fully reinstated. In *Crook vs. Jardis,* Lord *Denman* held the rule of diligence to be *gross negligence*; thus reducing and defining the rule of *Gill vs. Cutit.* In *Backhouse vs. Harrison* the same principle is ruled, and the authority of *Gill & Cutit* expressly overruled. At length, in *Goodman vs. Harvey,* it was decided that even *gross negligence* is not alone enough to destroy the title of the holder, for value, but that a case of *mala fides* must be made out on the part of the holder, in order to defeat his claim. Thus restoring to full command and authority, the old doctrine, "that the holder of bills of exchange, indorsed in blank, or other negotiable securities transferable by delivery, can give a title which he himself does not possess, to a person taking them *bona fide* and *for value.*" *Crook vs. Jardis,* 5 *B. & Ad.* 909. 3 *Nev. & Man.* 257. *C. C. & P.* 191, *S. C. Backhouse vs. Harrison,* 5 *B. & Ad.* 1098. 3 *N. & M.* 188, *S. C. Goodman vs. Harvey,* 4 *Ad. & El.* 870. 6 *N. & M.* 372, *Same case S. C.* 2 *Per. & Dav.* 579.

A summary of the law upon the questions thus far discussed, may be made as follows:

He who buys a promissory note, bill of exchange, or any other security, negotiable by delivery, before it is due, acquires a title to such security, and a property in it, by virtue of his possession.

But if such security be proven to have been lost or stolen, or in any other way appropriated in fraud of the rights of the owner, then such purchaser does not acquire a title to it, until he proves that he took it *bona fide* and *for value.*

And in that event, that is, when the purchaser has proven that he took the security *bona fide* and *for value,* his title may be defeated by proof on the part of the defendant in the action, where suit is brought *upon* the note or bill, or of the plaintiff, where the suit is brought *for* the note or bill, that he took it *mala fide.*

I hold it unnecessary to enter into a minute enquiry here, as to what, in the contemplation of the rule, is meant by *bona fide* and *for value*. In the language of the Law-Merchant, *a bona fide holder for value*, is a phrase of well ascertained meaning. He is such an one, as, in good faith, in the usual course of business, without notice or knowledge of any defect in the title, or the consideration of a note, acquires it for value paid. As used in reference to the case of a lost or stolen bill or note, I cannot imagine that it has a different signification. If the note be transferable by delivery—if it be not due—if it be taken in the usual course of business—if there be nothing on its face, or in the transaction of purchase to give notice to the buyer that the transferer has no title, and he pays value for it, he is, in my opinion, a *bona fide* holder. And when a plaintiff stands before the court with such a case, it being proven that the note was lost or stolen, it becomes then the business of the adverse party to show, by plea and proof, that he acquired it *mala fide*. It has been held, and by no less a man than *Lord Denman*, that to a suit by a holder of a bill fraudulently transferred, as to the the true owner, a plea that the plaintiff *did not take it for valuable consideration, and was not a bona fide holder, put in issue only the fact of paying value*. It was further held, that a plea that the *plaintiff was not a bona fide holder*, is not the same thing with *mala fides*. Lord Denman also held that *mala fides* must be distinctly alleged. *Uther vs. Rich*, 2 *Per. & Dav.* 579. What then constitutes *mala fides?* For that seems to be the only question that now remains. We have seen that the want of such caution as a careful and prudent man would take in his affairs is not a defence; it is not *mala fides*. And although it was at one time held that *gross negligence* was *mala fides*, yet we find that decision overruled, and now it is settled that *gross negligence* is no more than evidence of it. *Goodman vs. Harvey*, 4 *A. & E.* 870. *Uther vs. Rich*, 2 *Per. & Dav.* 579. *Mala fides* is notice, actual or constructive, of the fact, that the note, bill, or other security, is not the property of the person who offers it, and a privity with, and participation in a fraud upon the true owner. From the language of the authorities, and a careful examination of the cases made, I am satisfied that such is the meaning of *mala fides*. And that nothing will defeat the title of the holder, but a fraud upon the true owner, on his part. This idea is prominently held forth in *Miller vs. Race.*

So Lord Kenyon, in *Lawson vs. Weston*, says : "If there was any *fraud* in the transaction, &c." and farther, " the circumstance of the bill being lost, might have been material if they *could bring knowledge of that fact to the plaintiff*." In *Backhouse vs. Harrison, Patterson, J.* is reported to say, " I can perfectly understand that a party who takes a bill *fraudulently*, or under such circumstances that he must *know that the person offering it to him has no right to it*, will acquire no title, but I never could understand that a party who takes a bill *bona fide*, but under the circumstances mentioned in *Gill vs. Cutit*, does not acquire a property in it.    5 *B. & Adol.* 1098.    In *Uther vs. Rich, Lord Denman* held that *mala fides* should be expressly alleged, and that the only way to implicate the plaintiff in the alleged fraud against the true owner, was *to aver that he had notice of it*.    This case is an authority, establishing that *mala fides* is a *fraud* upon the owner, and that to set it up in defence, it is necessary to aver that the holder had notice of the fraudulent tenure by which the transferer to him possessed the bill.    2 *Per. & Dav.* 579.    This case also settles the position, that the circumstances by which notice is to be proved, are to be submitted to the jury.    It is the judgment, therefore, of this Court, that the title of the purchaser of a negotiable bill, note, or other security, transferable by delivery, who takes it before due, from one who himself has no title, *bona fide* and *for value*, is a good title.

And that such title is not defeated by the want of such caution in the purchase as a careful and prudent man will take of his own affairs, or by gross negligence.    That it may be defeated by proof of *mala fides* in the purchase; that *mala fides* is notice, actual or constructive, of the fact that the security is not the property of the person who offers it, and a privity with or participation in a fraud upon the true owner.

And that the want of proper caution, or gross negligence, or any fact that legitimately goes to show such notice, privity, or participation, may be submitted to the jury, subject to the direction of the Court, upon the law of the case.

As to the course which the loser of a bill or note should pursue, it is proper that he should give immediate notice to the parties on it, and to the public at large.    The giving of public notice of the loss of a bill will not, however, vary the rule as to the title of the *bona fide* purchaser for value.    There can be no doubt

but that notice brought home to him would defeat his title ; the *mere* fact of giving notice to the public would not. With such public notice, the question is still the same, *mala fides* or not.

And on the other hand, a failure to give public notice of the loss of a bill or note, will not preclude the owner from showing that the holder took it *mala fide.* It has been held that the negligence of the loser, in not giving notice of the loss, will prejudice his right of recovery against a purchaser who takes the bill without *actual notice,* yet without due caution, upon the maxim *potior est conditio possidentis. Per Best. C. J. in Snow vs. Peacock,* 3 *Bing.* 408, 411. 11 *Moore* 286, 445, 335. Irrespective of public notice by the loser, I conclude that his rights, and the rights of the buyer, depend upon the principles herein before stated.

· Let the judgment be affirmed.