Parsons, C. J.
From the statements in this case, several points arise, to which the facts seemed not to be sufficiently [ * 425 ] * directed. The conveyance by Weeks & Son to the plaintiffs being a mortgage, it is a pledge of a personal chattel. (3) But to such pledge a delivery of the chattel is essen *347 tial, to give the pawnee a special property in it. And although a ship at sea may be mortgaged, yet the mortgagee must take the possession as soon as may be on her return, before the mortgage is complete. (4) But the case does not state whether the plaintiffs did, or did not, take possession of the ship, on her putting into Portland. If it be said that, as the possession of the other moiety remained in Weeks £f Son as part owners, that possession shall be deemed the possession of the plaintiffs, it may well be doubted whether the owner of a chattel can pledge an undivided part of it., without delivering the whole to the pawnee. (5) But in this case it is not necessary to decide on this point.
Another point is, admitting the pledge of the moiety to be completed, and that the plaintiffs, by virtue of the special property resulting from it, are entitled to one moiety of the freight on the salt, yet the assignment of the other moiety is an assignment of a chose in action ; and the replevin ought to have been sued out in the names of Weeks Son, jointly with the plaintiffs. This objection would be entitled to much consideration, had it been made by plea in abatement. But as the case is stated, we ought to consider all objections to the form of the action as waived.
Another point is, whether the plaintiffs can be admitted to con tradict the bill of lading in this case, by proving that no freight had been paid for the salt. To this point the case does not seem to contain all the necessary facts. If Stubbs, the consignee, was a stranger to the shipment, and no party to the bill of lading in making it, it is very clear that as to him the bill of lading cannot be contradicted, by proving that no freight had been paid. As he is one of the shippers, if the acknowledgment by the master of the payment of freight had been obtained by fraud or mistake, we are satisfied that evidence of such fraud or mistake * might be admitted. But if the ship had been con- [*426] signed, in her outward voyage, to the shippers, as the correspondents at Liverpool of Weeks fy Son, the owners when she arrived there, and after the transfer, but without any knowledge of it, k was lawfully agreed by the master and the shippers, that the latter should credit the owners with the freight, and that the ' master would, on that agreement, acknowledge the freight to be paid, and under their agreement the salt was put on board, — we are satisfied that the plaintiffs would be bound by such agreement of *348 their master, confirmed by his signing a bill of lading, on receiving the salt, acknowledging the freight to have been paid, and that their remedy for the freight would be against Weeks Sp Son, who had the benefit of it. The plaintiffs would not have been personally answerable for any previous expenses about the ship, but when they purchased a moiety, they must take it subject to all encum brances on the ship, and to all lawful contracts, which the master had before made, or should afterwards make, respecting the employment of the ship ; and whatever contracts he might lawfully make as the master of the ship of Weeks Sp Son, he might still lawfully make, after the transfer, until he had notice of it. This authority in the master must be considered as acknowledged by every purchaser of a ship abroad, or manifest mischief and injustice might be the consequence.
But it is not necessary to have the case amended, to decide on this point, as the point remaining is sufficient to decide on the merits of this cause. Admitting, therefore, that the master might lawfully retain the salt until the freight was paid, after he had transported it to the port of delivery, — the principal question is, whether he could lawfully refuse to proceed from Portland to Boston, without a new stipulation for the payment of the freight at Boston. And we are satisfied that he could not. No freight was due until the voyage was performed and the salt ready to be delivered at Boston, because no impediment to the performing of the [ *427 ] voyage appears. If a ship on her way is prevented * from farther proceeding, and the shipper will receive his goods, he shah pay a pro rata freight; but this is not the case before us. • The master here refused to perform his voyage without a new stipulation for the payment of the freight, which he was not authorized to demand. At Boston he might have retained the salt until payment of the freight; or, if he had delivered it to the consignee, he might have recovered the freight money by action. Very clearly no freight was due at Portland; and the master unlawfully re fusing to perform the voyage, Stubbs might lawfully demand the sal of him at Portland. When the master refused to deliver the salt, he was answerable to Stubbs in trover, or the latter might take it by replevin. (6) When Stubbs had received the salt on his replevin, he was in the legal possession of it, which the plaintiffs could not lawfully disturb. If the master had no right to retain the" salt at Portland against Stubbs, the plaintiffs, his owners, could have no such right; and having no right to retain, they could not lawfully *349 take it by replevin from Stubbs, for the purpose of detaining it until the freight should be paid. In fact, the master refusing to perform his voyage, and transport the salt to the port of delivery, the ship has not earned any freight; and consequently neither the master nor owners have any right to retain the salt. The plaintiffs, therefore, have not maintained their action.
We are at a loss for any just ground, on which this writ was sued, admitting freight to be due; for on the writ sued by Stubbs against the master, the right to retain would have come in question, and the merits of the cause might have been decided. (7) This action was improperly commenced; for if the master had a right to retain, he, in the action against him, might have had judgment for a return, and the plaintiffs in this action might have judgment to keep the goods irreplevisable ; which would be unreasonable, when both causes must be determined on the same facts and principles, and by privies, against the same adversary. And if Stubbs had disclosed these facts by plea *in abatement, [*428 ] the writ must have abated. The law is otherwise, if Gray and the plaintiffs had each claimed the property in several and distinct rights.
There seems to be no color for making Gibbs, the officer, a defendant. His executing Stubbs’s writ of replevin, as was his duty, whether Stubbs could or could not maintain it, cannot make him liable as a wrong-doer. And if he had pleaded the facts here agreed, he must have had judgment.
Per Curiam. The plaintiffs must be nonsuit, and judgment be rendered for costs for Gibbs; and for Stubbs, that he have a return, together with his damages and costs.

 [A mortgage and a pledge are two different things. — Ed.]

 [It is not so. The mortgage is complete on the execution of it. The only con sequence of delay in taking possession, is to give countenance to an allegation of fraud in the conveyance, where the circumstances of the case tend to favor it. —Ed.]

 [An undivided part may be mortgaged; and delivery, in such case, is not necea sarv. — Ed.]

 [See note to Badger vs. Phinney, 15 Mass. 359, and note to Baker vs. Fales, 16 Mass. 147. —Ed.]

 [The case finds no such proceeding. — Ed.]