The opinion of the Court was delivered at November term 1823, by
Wilde J.
The plaintiff claims a special property in the chattels in question, (the brig Frances and her appurtenances,) by virtue of sundry attachments, made by the plaintiff’s testator before his decease, he being then a deputy of the late sheriff.
These attachments were duly returned, and some of the actions are still pending. The defendants’ counsel, contend that if any pecial property was acquired by said attachments, it by law vested in the sheriff, and not in the deputy ; and sundry cases have been cited in support of this objection. But on looking into those cases we do not find them at all decisive, and in the case of Perley v. Foster, 9 Mass. Rep. 112, a contrary doctrine is laid down as having been sanctioned by the practice and decisions of this Court. This is conformable to a well established principle, that he who has had possession in fact of goods and chattels, being answerable to another in whom the general property is, may maintain an action of trover for the conversion of them by a stranger. 6 Bac. Abr. 685, Trover, C.
A deputy sheriff, who takes possession of goods attached on mesne process, is bound to keep them safely, until the attach ment is dissolved ; and he is answerable both to debtor and creditor, if he suffers them to be taken away or injured. He has therefore the right of possession, and this constitutes such a special property as enables him to maintain trespass or trover against any one who may unlawfully intermeddle.[1]
It has been further objected, that the writ of Winslow Lewis & Co. against Ward, Ripley & Co. and Samuel Delano, under which the first attachment now set up was made, was void for a defect in point of form. Whether this is a defect fatal to the process is probably immaterial, as several other attachments were immediately after laid on the same property, against which no objections have been made. But the writ *403 of Winslow Lewis & Co. was not void ; and the judgment thereon was valid by virtue of the act of 1798, c. 5, § 1.
, It follows, then, that the plaintiff may well maintain the present action, if the brig, at the time of the attachments, was the property of the debtors. And this, as to the shares originally owned by Ward, Ripley & Co., depends on the question, whether the previous mortgage made by them to Kelly & T)raughan was, or was not, a fair and valid conveyance.
The plaintiff’s counsel contend that this title was defective for want of a delivery over of the vessel to the mortgagees, and that the transfer of the property was incomplete at the time of the attachments.
It is, however, clear, that the vessel, being at sea when the mortgage was made, could not be actually delivered, and that a symbolical delivery in such case was sufficient. The transfer of the property was, therefore, complete on the delivery of the bill of sale, liable, however, to be set aside by creditors on the ground of fraud, in case the mortgagees should neglect to take possession on the return of the vessel. Abbott on Shipping, 10 ; Cooke’s Bankr. Laws, c. 8, § 11 ; Atkinson v. Maling, 2 D. & E. 462 ; Putnam v. Dutch, 8 Mass. Rep. 287. It is true, that the purchaser of a ship at sea takes her subject to all incumbrances upon her before notice of the purchase. Portland Bank v. Stubbs, 6 Mass. Rep. 422. Therefore, if the ship should be hypothecated abroad after a sale at home, the hypothecation would take place of the sale. And in the case of Lamb et al. v. Durant, 12 Mass. Rep. 54, it was held, that where a ship owned by partners was sold by one of the partners at home, while the ship was at sea, and afterwards another partner, having the possession of the ship, sold and delivered her to another person, who had no knowledge of the first sale, the second purchaser’s title was valid. But this decision was founded on a principle of public policy in favor of trade, which is not applicable to the claims of creditors. But notwithstanding the sale of a ship at sea may be thus affected in various ways, it does not follow that the transmutation of the property is not completed by the delivery of the bill of sale. The property thereupon vests in the purchaser, although it may be divested by the neglect of the purchaser to take possession.
*404 We are then to consider whether any such neglect appears t^le Present case > and we are of opinion that there does not. The mortgagees were.not bound to follow the vessel from port to port, but might reasonably wait her return to the port where she belonged, and where the mortgage was executed. Ex Parte Batson, 1 Cooke’s Bankr. Laws, c. 8, § ll.[1]
Besides, it was agreed that the mortgagors should retain possession, until default of payment according to the condition ; so that the mortgagees were neither bound, nor entitled, to take possession, until after the 22d of April, 1818, when a letter was addressed to them by the mortgagors, requesting them to take possession. And on the 1st of May following notice of their claim was given at the custom-house, by the defendant, Tucker, by a memorandum on the certificate of enrolment. This, for the purpose of giving notice, was equivalent to a demand ; for it is clear, that a demand would have been useless. The vessel was then in the possession of the officer, who held her by virtue of sundry attachments ; having taken her a few days after her arrival at Boston, and before the mortgagees could have taken possession, or had a right so to do. The officer’s possession, therefore, was wrongful in its inception; and it must be a strong case, as was said in the case of Putnam v. Dutch, in which wrong by sufferance can be matured to right. An unlawful taking amounts to a conversion, and renders a demand and refusal unnecessary.
But it has been argued, that the clause respecting possession was fraudulent as against creditors. No case, however, can be found in support of this objection. Similar stipulations in mort gage deeds are not uncommon, nor can they be considered un reasonable. Where, by the terms of the conveyance, the yen dee is not to have possession until the performance, or nonperformance, of a certain condition, there the vendor’s continuing in possession is no evidence of fraud, because it is consistent with the trust appearing on the face of the deed,, and is not to be presumed to give a false credit to the vendor. “ Such possession,” says Buller J., (Edwards v. Harben, 2 D. & E. 596,) 66 comes within the rule, as accompanying and following *405 me deed.” Stone v. Grubham, 2 Bulstr. 226 ; Bucknal v. Roiston, Prec. Chan. 285 ; Jarman v. Woolloton, 3D. & E. 620 ; Barrow v. Paxton, 5 Johns. Rep. 258 ; Kidd v. Rawlinson, 2 B. & P. 60 ; Cadogan v. Kennett, Cowp. 432. There are many cases on this point,[1] 2but the principle now laid down has never been questioned.
An objection also has been made to the stipulation in the mortgage deed for the security of future advances and responsibilities. Such a stipulation may have a fraudulent aspect, or may be satisfactorily explained, according to the attending circumstances. Where a mortgage is made merely to secure future advances, without any other consideration at the time, it might be void against creditors, as tending to facilitate collusion, and enabling the mortgagor to get credit on his property, without any notice that it was incumbered. But if the object of the mortgage be, as it was in the present case, to secure an existing demand, the addition of a clause protecting future advances would not necessarily avoid the mortgage.
As to this point, and several others already noticed, the case under consideration cannot be distinguished from that of Atkinson v. Mating, 2 D. & E. 462. That was a case depending on a mortgage made for securing an advance, and such further sums as the mortgagee might afterwards advance ; with a clause, that until default of payment should be made it should be lawful for the mortgagor to hold the ship, and take the profits, for his own use and benefit. Much stress was laid in the argument on the clause for the security of advances to be made subsequently to the mortgage ; but the court held that there was no objection to it, and that the mortgage was valid, notwithstanding that clause and the one respecting the possession.[2]
All these objections to the mortgage, therefore, are unavailing. And if the mortgagees had appeared chargeable with neglect, in not taking possession seasonably, it would have been only evidence of fraud, and might have been explained, if sub *406 mitted to the consideration of the jury. It has been always held in this State, that the possession of the vendor after sale is only evidence of fraud, and not such a circumstance as per se necessarily invalidates the sale.
The next question is, whether the right of redemption of the shares mortgaged was liable to attachment. By our laws those goods and chattels which can be lawfully seized on execution, and those only, are liable to attachment. They must be the property of the debtor, and the attaching officer must have the right to seize them, and to hold possession, so that they may be finally taken on execution. Now there is no substantial difference, at common law, between a mortgage of real estate, and of a chattel. In both cases the property vests in the mortgagee, subject to be defeated by the performance of the condition. And on the forfeiture or non-performance of the condition his interest becomes absolute. Powell on Mortgages, 3, 4. It is therefore manifest, that the attaching officer had no legal right to seize the vessel, as the property of the mortgagors ; and that his attachment of the shares mortgaged was void. The same principle applies to pawns ; for if goods be pawned, and afterwards a judgment is recovered against the pawner, the goods cannot be taken in execution, until the money is paid or tendered to the pawnee. The King v Hanger, 3 Bulstr. 17 ; Bro. Abr. Pledges, &c. 28 ; 2 Bac Abr. 715, Execution, C. 4.
A mere equitable interest cannot be taken and sold on execu tian ; for where there is no legal right there is no legal remedy This was settled on great deliberation by the Court of King’s Bench in the case of Scott v. Scholey et al. 8 East, 467 ; and the reasons there given are entirely satisfactory. The judgment of the court in that case was sanctioned by the Court of Common Pleas, in the case of Metcalf et al. v. Scholey et al. 5 B. & P. 461, and is supported by all the authorities.
It is only by statute, that equities, or rights to redeem, are subject to attachment by ordinary process, and no statute has authorized the attachment of such interest in personal property. A creditor can reach such an interest of his debtor only by resorting to a court of equity, where he may be let in to redeem incumbrances ; Shirley v. Watts, 3 Atk. 200 ; unless, perhaps, *407 he may first remove the incumbrance, and then lay an attachment on the property ; as to which, however, we give no opinion. But until payment, or tender of payment, of the money due to the mortgagee or pawnee of goods and chattels, it is very clear that the creditor of the mortgagor or pawner has no remedy against them by attachment and execution.[1]
In some cases our trustee process might furnish a remedy ; as w here by agreement of parties the pawn or mortgaged property is sold by the pawnee or mortgagee, and a surplus remains over the debt secured. But where there is no agreement that the mortgagee shall sell the mortgaged property, he could not be compelled to do it, and would not be chargeable as trustee.[2]
As to Delano’s share, the plaintiff’s right to recover is well established. The writ was not void, as has been before shown, and the attachment was binding. This gave to the attaching officer the right of possession, and the taking by the defendants was tortious ; which amounts to a conversion. They cannot protect themselves by the plea that they acted as agents of the other tenants in common, for that gave them no authority to take the vessel from the officer.[3]
The verdict therefore is to be reduced so as to stand for the "amount of Delano’s share, and judgment thereon is to'be rendered for the plaintiff.[4]

 See Brownell v. Manchester, ante, 234; Hall v. Walbridge, 2 Aikens. 215

 See Joy v. Sears, 9 Pick. 4.

 Sec the note of the editor in 3 Cowen, 189, where a large number of case» are collected.

 See Adams v. Wheeler, 10 Pick. 199; Holbrook v. Baker, 5 Greenl. 309; D'Wolf v. Harris, 4 Mason, 530, Divver v. McLaughlin, 2 Wendell, 596; United States v. Hooe, 3 Cranch, 73; Pettibone v. Griswold, 4 Conn. R. 161.

 See Holbrook v. Baker, 5 Greenl. 312; Story on Bailments, p. 239.

 See Hudson v. Hunt, 5 N. Hamp. R. 538; Story on Bailments, p. 213; Howard v. Card, 6 Greenl. 353; but see Si. 1829, c. 124. In Louisiana, a creditor may be compelled “ by the debtor or those in his right ” to sell the thing pledged to secure his demand. Williams v. Schooner St. Stephens, 14 Martin’s Louisiana R 22.

 But though the officer may seize the whole of chattels owned in common, he can sell only the undivided share of the judgment debtor; and if he sells the whole, he is liable to the co-tenant in trespass, trover or assumpsit, at the election of the co-tenant. Melville v. Brown, 15 Mass. R. 82; Beaumont v Crane, 14 Mass. R. 400. See also Prince v. Shepard, 9 Pick. 176.

 See Haskell v. Greely, 3 Greenl. 427, 428