## Case No. 1,792.

### BRADSTREET v. HERAN.

[1 Abb. Adm. 209.][1]

District Court, S. D. New York. . April Term, 1848.[2]

SHIPPING—CARRIAGE OF GOODS—FAILURE TO DELIVER—QUARANTINE — BILL OF LADING — CONSTRUCTION — USAGE AND CUSTOM —VARYING BY PAROL PROOF — CONCLUSIVENESS — RIGHTS OF CONSIGNEES.

1. The owners of a vessel are excused from fulfilling the engagement of a bill of lading to deliver the cargo at a specified port, by the interposition of sanitary or prohibitory laws controlling them in that respect; for the contract to deliver will be construed as subject to all restraints of government.

[Cited in Wells v. Maine Steamship Co., Case No. 17,401.]

2. A usage of consignees at a particular port to receive shipments during the quarantine season, at the quarantine grounds, as being a compliance with the engagement of the bill of lading to deliver at such port, is valid; and the bill of lading should be construed with reference to it.

---

[1] [Reported by Abbott Brothers.]
[2] [Affirmed in Bradstreet v. Heran, Case No. 1,792a.]

3. As between the original parties to the bill of lading, its statements respecting the condition of the goods at the time they are laden on board, may be explained or rectified by parol proof.

[Cited in The California, Case No. 2,314; Robinson v. Memphis & C. R. Co., 9 Fed. 139; The T. A. Goddard, 12 Fed. 177; The Querini Stamphalia, 19 Fed. 125.]

4. But as against assignees of the cargo upon a valuable consideration, the rule is clear that the master and owner are concluded by the representations of the bill of lading.

[Cited in The Pietro G., 39 Fed. 368.]

5. Consignees are entitled to a reasonable opportunity to ascertain whether goods delivered to them correspond in quantity and condition with the description given in the shipping documents, and the liability of the master and owner remains undischarged during such period.

[Cited in Robinson v. Memphis & C. R. Co., 9 Fed. 138.]

[6. Cited in Kennedy v. Dodge, Case No. 7,701, Holyoke v. Depew, Id. 6,652, and The Ciampa Emilia, 39 Fed. 127, to the point that a shipper may recoup damages from the freight money.]

In admiralty. This was a libel in personam, by John A. Bradstreet, master of the bark Lowell, against David Heran and others, members of the firm of Heran, Lees & Co., to recover a balance of freight due. [Decree for respondents.]

The libel showed that the libellant took on board the Lowell, at the port of New Orleans, 507 bales of cotton, consigned to the defendants at this port, and that the cotton was brought hither and duly delivered to the respondent; and the libel claimed a balance of $1,756.02, freight due. The bill of lading was in the following terms: "Shipped in good order and well conditioned, by M. D. Cooper & Co., on board the bark called the Lowell, whereof —— is master, now lying in the port of New Orleans, and bound for New York, to say, 507 bales of cotton, one bundle containing samples, &c., and are to be delivered in the like good order and condition at the port of New York, (dangers of seas excepted,) unto Messrs. Heran, Lees & Co., or to their assignees, &c. July 6, 1847."

Edwin Burr, for libellants.
Luther R. Marsh, for respondents.

BETTS, District Judge. Two objections in bar of this action were relied upon by the defendants. First, that the cotton was not delivered at the port of New York, in fulfillment of the shipping contract. Second, that the cotton, when delivered, was not in good order and well conditioned.

The vessel arrived in the port of New York during the latter part of July, and under the laws of the state was subject to quarantine at Staten Island. The cotton was there discharged on board of lighters employed by the respondents, and was taken to Brooklyn, where it was received and stored by them. It was not only proved that vessels from New Orleans, at that period of the year, were prohibited by law from landing cotton in the city of New York, but also that it was the established usage for owners and consignees to receive their shipments at the quarantine, as being delivered pursuant to bills of lading engaging to make delivery in New York. In either point of view, these facts defeat the obligation. The owners of the ship are excused from fulfilling their engagement to deliver their cargo in the city, by the interposition of sanitary or prohibitory laws, which control them in that respect; as the contract to deliver will be construed to be subject to all restraints of government, and that risk consequently falls upon the shipper. The case of Morgan v. Insurance Co. of North America, 4 Dall. [4 U. S.] 455, is an authority upon this point. In that case the cargo was shipped from Philadelphia for Surinam, August 7, 1799, at which time the colony of Surinam was in possession of the Dutch. The vessel arrived in the river Surinam the 17th of September following, but meantime the colony had been conquered by the British forces. Permission was obtained from the British commander for the vessel to go up the river to the town of Paramanto, which she did, and lay in the harbor for a week; but the British officers absolutely refused permission to land any article of the cargo whatever, excepting the provisions, whereupon it was brought back to Philadelphia. The supreme court of Pennsylvania held that under these circumstances freight was earned. Chief Justice Stillman says: "The owner of the ship has been in no fault whatever. When he took the goods on freight, there was an open commerce between Philadelphia and Surinam; the goods were carried to the port of delivery; the vessel waited there seven days, and the captain offered to deliver the cargo to the consignee, who refused to receive it. Nothing prevented it but the prohibition of the British government. It is not like the case of a vessel which is prevented from entering the port of delivery by a blockading squadron, for there the voyage is not performed, and it is impossible to say certainly that it would have been safely performed if there had been no blockade. I think it most agreeable to reason and justice, that the obtaining permission to land the cargo should in this case be considered as the business of the consignee. That being established, it follows that the freight was earned." But furthermore, it is proved in the case that it is the established usage of this port for owners and consignees to receive delivery of their shipments made at the quarantine during the quarantine season, as being a compliance with the engagement in the bill of lading to make delivery in New York. Such a usage is valid, and the bill of lading should be construed in reference to it. Gracie v. Marine Ins. Co. of Baltimore, 8 Cranch [12 U. S.] 75. Upon these grounds I am of opinion that, independently

of the alleged acceptance of the goods by the respondents, their defence, so far as it rests upon the first point taken, cannot be maintained.

But upon the second ground of defence, viz.: that the cotton, when delivered, was not in good order, it seems to me that, as the case stands, the respondents are not made responsible for the freight. It was contended, on the part of the libellant, that the consignees were in fact the shippers of the cotton—it having been furnished to the vessel by their agent. This fact, if it had appeared in evidence, would have had a most important bearing; because, as between the original parties, the representation of the bill of lading as to the condition of the cotton at the time it was received, might undoubtedly be explained or rectified,[3] (Abb. Shipp. 324,) and so, in that aspect of the case, the libellant might have shown, as was attempted, that the damage to the goods was received before they were laden on board. But the suggestion that the respondents in fact shipped the cotton on board through agents, is wholly unsupported by proof. They therefore cannot be regarded as the shippers or owners of the cotton, but must be treated as consignees; and they prove by their bookkeeper, that on the receipt of the bill of lading, they made the shippers an advance of $21,000 on the cotton, before its arrival in this port. The whole property became thereby, according to the mercantile law, pledged to them for the security of their advance, and they are entitled to demand it as described in the bill of lading, in solido. or its equivalent, of the shipowner; his lien for freight being first satisfied. Nor it is necessary to aver such advance in the answer, in order to be entitled to prove it. The pleadings on both sides allege that they are consignees, and they have a right to show the extent of their privilege or lien on the consignment. The rule of law is clear, that the master and owner are concluded by the representations of the bill of lading, as between themselves and third persons entitled to the cargo as assignees upon a valuable consideration. Portland Bank v. Stubbs, 6 Mass. 422; Abb. Shipp. 323. Nor can the court regard the suggestion that the cotton is amply sufficient

to repay the respondents their advances, and also to satisfy the freight. I am furnished with no evidence showing the fact to be so. It is accordingly unnecessary to inquire what rule of law would govern, if such a state of facts existed.

There would be a serious difficulty in receiving testimony on the part of the libellant, in the present shape of the pleadings, showing that the cotton was injured by country damage[4] when laden on board, if the suit had been brought by the shipper. The libel avers that it was shipped in good order and well-conditioned. The answer admits that fact. Accordingly, independent of the effect and operation of the bill of lading making the same assertions, it would be against the well-settled principles of admiralty proceedings to receive evidence contradictory to the averments and admissions of the pleadings on the same point.[5]

The libellant, under the pleadings and bill of lading, was bound to deliver the cargo of cotton to the respondents in good order and well-conditioned; and it being fully proved on their part, that when delivered to them it was damaged by water and injured to an amount greater than the balance of freight unpaid, they are entitled to withhold that freight, either by way of recoupment of damage, or upon the ground that the libellant cannot maintain an action on the contract, without showing that its requisitions have been fully complied with on his own part. The Nathaniel Hooper [Case No. 10,032]; Jordan v. Warren Ins. Co. [Id. 7,524]; Caze v. Baltimore Ins. Co., 7 Cranch [11 U. S.] 358; McAllister v. Reab, 4 Wend. 483, affirmed 8 Wend. 109.

The delivery to the respondents in lighters, to unlade the ship, cannot be regarded such an acceptance of the cotton, on their part, as to conclude them from showing that it did not conform to and fulfill the stipulations of the bill of lading. It is not usage, nor in most instances would it be practicable, for consignees to inspect and examine shipments when delivered from the ship. A reasonable opportunity must be allowed, after packages and bales come into their possession, to ascertain whether they correspond in quantity and condition with the shipping documents, and the liability of the master and owner remains undischarged during that period.

The damage complained of in this case was not external and exposed to view when the goods were landed, but to its chief extent was internal, and only discoverable by opening and separating the contents of the bales. The disbursements and charges on the part of the respondents in making such examination were $261.40, which sum they

---

[3] See the case of Goodrich v. Norris [Case No. 5,545], where the right of the shipowner, in an action by the shipper, to explain the statements in the bill of lading respecting the quantity of goods received, is considered. See, also, on the admissibility of evidence to explain the bill in other respects. the case of Manchester v. Milne [Id. 9,006], where it is held that a variance between the quantity of the cargo delivered and that receipted for, may be explained by evidence showing it to be the result of an inaccurate mode of measurement employed; also, Zerega v. Poppe [Id. 18,213], decided January, 1849, where it is held, that notwithstanding the acknowledgment that the goods are received in good order, the carrier may, as against the owner, show that the injury to the goods was occasioned by insufficiency in the cask, case, &c. in which they were packed.

[4] Dealers in cotton are accustomed to call damage received by cotton while it is yet in the country where it is grown, as contradistinguished from such as is received on board ship, country damage.

[5] See Davis v. Leslie [Case No. 3,639.]

insist they are entitled to retain from the freight. The libel admits payment of the residue of the freight, and only demands this balance. Under the facts in evidence I think that they cannot enforce the payment. Decree for respondents, with costs.

