GRAFTON SEARS, JR. & others *vs.* WILLIAM A. WINGATE.

A bill of lading is conclusive evidence against the master of a vessel in favor of a consignee, not a party to the contract, who has advanced money upon the faith of its statements, as to the amount and condition of the property of which it acknowledges the receipt, so far as from the whole instrument and usage of trade the facts may be regarded as absolute statements from the master's own knowledge; but it is not conclusive against the owners, as to property not actually shipped, because it is not within the scope of the master's authority from the owners to sign bills of lading for any property but such as is put on board.

In an action by the owners of a vessel, of whom the master is one, to recover freight for goods actually carried, delivered and accepted, the consignee cannot recoup in damages a loss sustained by him by reason of a failure to deliver cargo never actually put on board, but which the master, without other authority than belonged to him in that capacity, improperly receipted for in the bill of lading. The proper remedy is by an action against the master, or the consignor.

CONTRACT brought by the owners of the schooner Sylvanus Allen, to recover a balance due for the freight of a cargo of coal from Philadelphia to Boston, consigned to the defendant.

At the trial in the superior court, the following facts were agreed: The captain of said schooner, one of the plaintiffs, signed bills of lading, August 5, 1859, a copy of which is printed in the margin,* for 403 tons of coal. The defendant received th

---

* " Shipped in good order, by N. Sturtevant & Co., in and upon the schooner called the Sylvanus Allen, of Dennis, whereof Grafton Sears, Jr. is master, now lying in the River        of Philadelphia, and bound for Boston, Mass., Four Hundred and Three Tons Peach Mountain Coal (as per margin) which I

Sears & others *v.* Wingate.

coal without objection; the amount delivered was only $391\frac{868}{2240}$ tons; but it was the whole cargo received on board by the plaintiffs, in Philadelphia  The freight due on the cargo delivered would be $532.26; the plaintiffs received on account of the same $506.75; and the difference between these sums was the amount sought to be recovered in this action. On the 2d of August 1859, the defendant negotiated for a cargo of coal from Sturtevant & Co., in Philadelphia, who thereupon shipped the cargo in question to him on board of the plaintiffs' vessel. The defendant received the bill of lading on the 8th of August, and paid for the same — 403 tons — by note at four months. The vessel arrived in Boston on the 18th of August. The captain did not weigh the coal in Philadelphia, and had no means of knowing the number of tons received on board of the vessel, but signed the bills of lading upon the representations of the shippers. No declaration in set-off was filed, or cross action brought.

Upon these facts, judgment was rendered for the defendant, and the plaintiffs appealed.

*J. Nickerson,* for the plaintiffs.

*H. Jewell,* for the defendant. The consignee, before the arrival of the vessel, paid for the full amount of coal named in the bill of lading; and that amount is therefore conclusive in this action. *Howard* v. *Tucker,* 1 B. & Ad. 712. *Portland Bank* v. *Stubbs,*

---

promise to deliver in like good order at the aforesaid port of Boston (the dangers of the seas only excepted), unto Wm. A. Wingate, or to his assigns, he or they paying freight for the same, at the rate of $1\frac{86}{100}$ dollars per ton.

In witness whereof, I, the master or purser of said vessel, have affixed to three bills of lading, all of this tenor and date, one of which being accomplished, the others to stand void.

Dated at Philadelphia, August 5, 1859.

| | | | |
|---|---|---|---|
| | (Signed) | | GRAFTON SEARS, JR." |
| (On margin.) | Tons coal, — | | |
| | broken | 194 | |
| | stove | 209 | |
| | | — | |
| | in hold | 403 | |

6 Mass. 422. *Dickerson* v. *Seelye*, 12 Barb. 99. *Schooner Freeman* v. *Buckingham*, 18 How. (U. S.) 182. The defendant may therefore recoup in this action. *Bowker* v. *Hoyt*, 18 Pick. 555. *Perley* v. *Balch*, 23 Pick. 283. *McAllister* v. *Reab*, 4 Wend. 484; S. C. 8 Wend. 109.

HOAR, J. It is the general doctrine that a receipt may be qualified and explained by parol evidence. A bill of lading partakes of the nature both of a receipt and a contract, and, so far as it is a receipt, it has always been held that it was not conclusive, but was open to explanation between the original parties. *Bates* v. *Todd*, 1 M. & Rob. 106. *Portland Bank* v. *Stubbs*, 6 Mass. 422. *O'Brien* v. *Gilchrist*, 34 Maine, 554. In *Berkley* v. *Watling*, 7 Ad. & El. 29, which was assumpsit against three owners of a ship, brought by the consignee named in the bill of lading, for a failure to deliver the goods named therein, which had never in fact been shipped, it was held, that, as it appeared by the declaration and proof that Watling was the plaintiff's agent to make the shipment, the plaintiff was bound by his knowledge of the fact that the goods were not put on board; and though Watling was one of the owners, that the other two defendants could avail themselves of it in defence. But Patteson, J. said: " This decision will not affect any question which may arise hereafter as to the conclusiveness of a bill of lading between a ship-owner and an indorsee for value. I should be sorry to destroy the negotiability of the instrument. But the plaintiff is here the shipper in effect, and sues as shipper; and the bill of lading, made out by his agent, is not conclusive between him and the defendants Nave and Crisp." In *Sutton* v. *Kettell*, in the district court of the United States for the district of Massachusetts, Judge Sprague held that the receipt in the bill of lading was open to explanation against the consignees, where it did not appear that they had made advances upon the faith of it. Sprague's Decis. 309. See also *Blanchard* v. *Page*, 8 Gray, 287.

But although the rule is well established as between the original parties to the contract, it has been somewhat modified in its application to cases which have arisen between the owners,

where the master, who has signed the bill of lading, has acted within the scope of his authority, and a consignee or indorsee, who has made advances in good faith upon the credit of the instrument. Thus in *Portland Bank* v. *Stubbs*, 6 Mass. 425, it was said by Parsons, C. J.: " If Stubbs, the consignee, was a stranger to the shipment, and no party to the bill of lading in making it, it is very clear that as to him the bill of lading cannot be contradicted, by proving that no freight had been paid." In that case, the bill of lading contained a statement that the freight had been paid in advance.

In *Howard* v. *Tucker*, 1 B. & Ad. 712, the same point was decided ; and it was held that the owner was estopped, as against the assignee of the bill of lading, from claiming freight when the vessel arrived. The same principle was stated by Sedgwick, J., in *Barrett* v. *Rogers*, 7 Mass. 297, to be applicable to the statements in the bill of lading as to the condition of the cargo, so far as it was open to inspection by the master ; though the court did not hold that the certificate that the goods shipped were in good condition was conclusive in regard to concealed defects in packages not opened.

In *Dickerson* v. *Seelye*, 12 Barb. 102, the broad proposition is stated by Edmonds, J., that " as between the shipper of the goods and the owner of the vessel, a bill of lading may be explained so far as it is a receipt ; that is, as to the quantity of goods shipped, and their condition, and the like ; but as between the owner of the vessel and an assignee for a valuable consideration paid on the strength of the bill of lading, it may not be explained."

In *Tindall* v. *Taylor*, 4 El. & Bl. 219, Lord Campbell says that " an action of contract on the bill of lading could not have been maintained by the indorsee of the bill of lading ; but in respect of his property in the goods, he might have maintained an action against the master for detaining or converting them, and the master would be estopped from denying that he had the goods, after the declaration in the bill of lading, on the faith · of which the indorsee had bought and paid for them."

In *Grant* v. *Norway*, 10 C. B. 665, the question was first

distinctly presented for adjudication in England, whether the master of a ship, signing a bill of lading for goods which have never been shipped, is to be considered the agent of the owner in that behalf, so as to make the latter responsible to an indorsee of the bill for value ; and after full consideration the court of common pleas held that he was not. The principle of this decision was subsequently followed in *Hubbersty* v. *Ward*, 8 Exch. 330, and in *Coleman* v. *Riches*, 16 C. B. 104; and was approved and adopted by the supreme court of the United States in *Schooner Freeman* v. *Buckingham*, 18 How. (U. S.) 182. In giving the opinion of the court in *Grant* v. *Norway*, Jervis, C. J. remarks that, with regard to goods put on board, the master may sign the bill of lading, and acknowledge the nature, quality and condition of the goods. As this is within the scope of his agency, it would follow that his declarations in the bill of lading respecting these matters would estop the owners to the same extent that they would the master.

The point is a new one in this commonwealth, but the limitation fixed to the responsibility of the owner by the English courts appears to be just, and, upon a matter of such practical importance, it is certainly desirable that the rule should be uniform.

We therefore think that the rules which must govern the case at bar are these :

First. The receipt in the bill of lading is open to explanation between the master and the shipper of the goods.

Secondly. The master is estopped, as against a consignee who is not a party to the contract, and as against an assignee of the bill of lading, when either has taken it for a valuable consideration upon the faith of the acknowledgments which it contains, to deny the truth of the statements to which he has given credit by his signature, so far as those statements relate to matters which are, or ought to be, within his knowledge.

Thirdly. When the master is acting within the limits of his authority, the owners are estopped in like manner with him ; but it is not within the general scope of the master's authority to sign bills of lading for any goods not actually received on board.

In applying these rules to the case before us, we are met with the objection, on the part of the plaintiffs, that the defendant was a party to the bill of lading, and that the shipment was made on his account. If this were so, it would be decisive of the case, and the statements in the agreement of the parties are not very precise or clear respecting it. If the consignor were merely the agent of the consignee, their rights would be the same, and *Berkley* v. *Watling* would be exactly in point. But in the agreed statement of facts it is only said that the defendant " negotiated for a cargo of coal from Sturtevant & Co." before the shipment, and it does not appear that the purchase was completed or the property passed, until the bill of lading was received, and the payment made.

In the next place, it is a question of some difficulty whether the decision that receipting for goods not actually shipped is not within the ordinary scope of the master's duty, and so does not bind the owners, is applicable to a case in which a cargo is received, and the master, not fraudulently, but through mistake or accident, gives a receipt for it as amounting to a greater quantity than he has on board. It is perhaps not easy to draw a distinction of this kind, without great practical inconvenience resulting from it. The giving a bill of lading for goods which are not shipped, whether separately, or by including them with others actually on board, is a violation of the master's duty, and unwarranted by his employment. The responsibility of the owners to the consignee, unless the shipper is the agent of the consignee, is not upon the contract, but results exclusively from the possession of the goods, under an obligation to deliver them safely to their owner. They cannot be bound by the false representations of the master, except upon the ground of agency, and strictly within the limits to which the agency extends. In *Shepherd* v. *Naylor*, 5 Gray, 592, it is said by Chief Justice Shaw, that if " the bill of lading expressed the number of bundles, adding the aggregate weight, probably the ship-owner would be responsible for the number of bundles, because that is visible and easily ascertained, and may identify the shipment; " " but the weight would be an immaterial circumstance,

not essential to the contract." No difference between the responsibility of the master and owner is suggested. The difficulty in applying that principle to this case is, that there is nothing here in the bill of lading by which to identify the shipment, except the statement of weight. And while the ship-owner should be responsible for the statement of the master as to anything which the master knows or ought to know, and within the scope of his employment, the master himself is not answerable for a misstatement in any particular, which, according to the usage of trade, would be regarded as merely an estimate, and not a statement of a fact within his knowledge.

The conclusion to which we are thus brought is therefore that, if the receipt in the bill of lading of 403 tons is to be considered a statement erroneously but not fraudulently made, respecting the quantity of goods really received, and not intending to include others not received, it would be open to the master as well as the owners to explain the error, because the master has no opportunity to ascertain the exact weight, and could not be supposed to intend to warrant it. *Shepherd* v. *Naylor, ubi supra.* But if it were regarded as a receipting for property not on board, then the bill of lading would not be conclusive against the owners, and would be against the master. But the master is one of the owners, and the suit is brought by the owners to recover the freight on the cargo which was delivered and accepted ; and the defendant seeks to recoup in damages for the loss which he has suffered by the failure to deliver the whole of the cargo which the bill of lading apparently assigned to him. Under these circumstances, it would not seem to us equitable to allow a recoupment, which is only permitted to avoid circuity of action, on account of a fraud or misrepresentation of one of the plaintiffs, for which the others are not responsible. There is no evidence to show what the contract between the owners was, or that the master had any authority to bind them except that which resulted from his employment in that capacity.

In either view of the case, the plaintiffs are entitled to judgment.